CONTINENTAL BRONZE COMPANY, INC. *vs.* SALVO & ARMSTRONG STEEL COMPANY, INC. & another.[1]

Bristol. November 16, 1979. – December 14, 1979.

Present: BROWN, GREANEY, & DREBEN, JJ.

*Bond,* Public works. *Public Works. Contract,* Parties.

In a suit for labor and materials supplied by the plaintiff against a subcontractor and its surety, the plaintiff was not entitled to recovery against the surety where the performance and payment bond had been written pursuant to G. L. c. 149, § 44H, in order to secure to the general contractor the subcontractor's performance and to indemnify the general contractor in the event it became obligated to pay any of the subcontractor's subcontractors; the supplier was not a third-party beneficiary of the bond. [801-805]

CIVIL ACTION commenced in the Superior Court on March 4, 1977.

The case was heard by *Sullivan,* J., a District Court judge sitting under statutory authority.

*Thomas T. Brady* for the defendants.
*Girard R. Visconti* for the plaintiff.

GREANEY, J. Continental Bronze Company, Inc. (Continental), supplied labor and materials to Salvo & Armstrong Steel Company, Inc. (Salvo), in connection with the latter's subcontract to provide and install metalwork in a publicly funded project constructed for the New Bedford Housing Authority (Authority). Salvo failed to

---

[1] American Insurance Company.

pay Continental, thereby precipitating this suit for labor
and materials by Continental against Salvo and its sure-
ty, the American Insurance Company (American). It ap-
pears that Continental, prior to commencing suit, lost its
rights against the project's general contractor, F. L. Col-
lins & Sons, Inc. (Collins), and Collins' surety, Travelers
Insurance Company, on the bond posted in conformance
with G. L. c. 149, § 29. Those rights had been lost as a re-
sult of Continental's tardiness in complying with the no-
tice provisions set forth in the third paragraph of § 29.[2]
Pleadings and submissions (bids, contracts, the bond
and affidavits) evolved into cross motions for summary
judgment. Mass.R.Civ.P. 56(a)(b), 365 Mass. 824 (1975).
The judge denied the defendants' motions, allowed the
plaintiff's, and permitted Continental a recovery of
$7,390 against Salvo and American. In so doing the
judge found that American's bond was written for Salvo
to benefit Collins, but that Continental could reach the
bond as a third-party beneficiary thereof. Despite the
bond's adherence to the provisions of G. L. c. 149, § 44H,
he concluded that certain language in the bond was am-
biguous and ruled that the ambiguity should be resolved
in favor of permitting Continental a recovery on the
bond. Although the appeal must be dismissed for lack of
entry of a judgment (Mass.R.Civ.P. 58[a], as amended,
371 Mass. 908 [1977], *Levy* v. *Bendetson,* 6 Mass. App.
Ct. 558, 561 [1978]), because the issues have been fully
briefed we express our views that the recovery permitted
Continental against Salvo was correct,[3] but that the re-
covery permitted against American was erroneous. This

---

[2] Continental gave written notice to Collins of a possible claim
against the general contractor and its surety well beyond the sixty-
five day period specified for the notice by the statute.

[3] The defendant Salvo failed to allege any specific facts which estab-
lished the existence of a genuine, triable issue on the question of its
indebtedness to Continental for the balance owed for the work per-
formed and materials supplied by the latter on its subcontract.

will pave the way for the entry of a judgment consistent with this opinion.

1.  The process of bidding and bonding on this public project followed the pattern established for such procedures in G. L. c. 149, § 29,[4] and in §§ 44A through 44L. Collins, the general contractor, obtained the bond required by § 29 of c. 149 in favor of the authority to secure the payment by Collins' subcontractors for labor performed or furnished and materials used or employed in the projects. Because of the exposure of Collins and its surety under § 29 of c. 149 to parties who contracted with the various subcontractors, Collins requested (as expressly authorized by § 44H) that its principal subcontractors, including Salvo, be bonded. Salvo's bond, written by American, contained the promises set forth in the margin[5] in language which tracked virtually word for word the requirements for this type of bond spelled out in the third paragraph of G. L. c. 149, § 44H.

American asserts correctly that it has written a statutory performance and payment bond pursuant to G. L. c. 149, § 44H, designed solely to benefit Collins. The bond's promises are twofold: (1) to secure to *Collins* the performance of Salvo's metalwork subcontract; and (2) to indemnify *Collins* in the event Collins became obligated under G. L. c. 149, § 29, to pay any of Salvo's subcon-

---

[4] General Laws c. 149, § 29, is made applicable to projects built by housing authorities by virtue of G. L. c. 121B, § 13.

[5] "NOW, THE CONDITION OF THIS OBLIGATION is such that if the subcontractor shall faithfully perform the subcontract and shall indemnify and hold harmless the general contractor and the surety or sureties under the labor and materials or payment bond furnished by such general contractor to the awarding authority against (1) any and all loss and expense arising out of any and all claims in connection with the performance of said subcontract which would be required to be paid under the labor and materials or payment bond furnished by the general contractor to the awarding authority and (2) attorney's fees in the event the subcontractor, after notice, fails to assume the defense of and defend such claims, then this obligation shall be null and void; otherwise it shall remain in full force and virtue."

tractors. These promises must be construed in view of the third paragraph of G. L. c. 149, § 44H, inserted by St. 1960, c. 771, § 6, which defines the scope and contents of a subcontractor's bond and which expressly states that "[a] performance and payment bond furnished by the subcontractor at the request of a general contractor . . . *shall be for the benefit of the general contractor* . . . [emphasis supplied]." This language and the insertion of the present third paragraph into § 44H four years after the insertion of § 44H itself (by St. 1956, c. 679, § 1) and three years after the rewriting of c. 149, § 29 (by St. 1957, c. 682, § 1), which broadened the range of remedies available to parties dealing with subcontractors against the general contractor and its surety,[6] lead to the conclusion that a bond written in strict conformity with the terms of § 44H is for the benefit of the general contractor alone. See generally *Claycraft Co.* v. *John Bowen Co.,* 287 Mass. 255, 257 (1934); *Waite Hardware Co.* v. *Ardini & Pfau, Inc.,* 339 Mass. 634, 637-638 (1959); *James D. Shea Co.* v. *Perini Corp.,* 2 Mass. App. Ct. 912 (1975), which limit the range of obligees and beneficiaries of payment and performance bonds to those parties enumerated either in the bond or in the statute. See also *Scaduto* v. *Orlando,* 340 F.2d 293, 300 (2d Cir.), cert. denied, 380 U.S. 978 (1965) (applying Massachusetts law). This conclusion is also buttressed by a comparison of the language in § 44H tying the benefits of a bond written thereunder to the general contractor with the language in § 29A of c. 149,[7] as amended by St. 1972, c. 399,

---

[6] Statute 1964, c. 609, §§ 4 and 5, made amendments to G. L. c. 149, § 29, which are not relevant in this case, and St. 1972, c. 774, § 5, changed the procedure and time period for those contracting with the subcontractor to make claims.

[7] "Whenever any surety bond shall be given in connection with any written contract for the erection, alteration, repair or removal of any private building or structure upon privately owned land, containing a condition for the payment of all labor and material used or reasonably required for use in the performance of the contract, any person who fur-

which permits a third party such as Continental in a *private* construction contract to claim the benefits of a subcontractor's bond where the terms of the bond so permit. The absence of anything comparable to § 29A with reference to the interrelationship of § 29 and § 44H bonds further suggests that the Legislature did not intend direct suits by sub-subcontractors on subcontractor's bonds. See and compare *Powers Regulator Co.* v. *United States Fid. and Guar. Co.,* 7 Mass. App. Ct. 913 (1979) (where on a private project, a subcontractor's bond, containing language unnecessary to the general contractor's protection was held under G. L. c. 149, § 29A, to have promised payment to a person supplying labor and materials in the prosecution of the work provided for in the contract), with *Mosaic Tile Co.* v. *Rusco Prod. of Massachusetts, Inc.,* 350 Mass. 433, 437 (1966) (where a supplier of materials to a subcontractor was denied recovery against the subcontractor's bond because the benefit to claimants under § 29 "covers only bonds given by the general contractor and does not affect a payment security bond from a subcontractor to the general contractor"). The *Mosaic Tile* case is particularly instructive because the claim made and rejected in that case under § 29 is similar to the claim made by Continental under § 44H in this action. In view of the foregoing discussion and the predominant legislative facts, we cannot accept Continental's argument that the bond which secured to Collins the performance of Salvo's subcontract was meant to give Continental the right to sue American if it was not paid. The purpose of that promise in this § 44H bond is aimed at performance and was to protect Collins in the event Salvo should default on the metalwork by requiring American to reimburse Collins for costs incurred to hire another subcontractor to

nishes such labor or materials shall be entitled to sue for his own use and benefit upon such bond in accordance with its provisions and need not prove that he relied upon the bond [in] furnishing labor or material."

804                                    8 Mass. App. Ct. 799

Continental Bronze Co., Inc. *v.* Salvo & Armstrong Steel Co., Inc..

complete Salvo's work. Similarly, the indemnification promise in the bond was exclusively for Collins' benefit and secured payment in the event of the imposition of liability on Collins under § 29 of c. 149. Continental cannot claim to have been shortchanged because of the express remedy afforded it by the first and third paragraphs of G. L. c. 149, § 29, against Collins and its surety, a remedy which has been construed to provide broad protection to those in Continental's position. See *M. Lasden, Inc.* v. *Decker Elec. Corp.,* 372 Mass. 179, 183 (1977), and cases cited. The decision in *Royal Indem. Co.* v. *Alexander Indus., Inc.,* 211 A.2d 919 (Del. 1965), relied upon by the plaintiff as justifying recovery is inapposite. That case was decided on general suretyship principles inapplicable here because of our particular statutory framework. Other cases brought to our attention by Continental are also not persuasive because they do not involve statutes similar to ours, or because they also base their analysis on general suretyship principles that in effect permit parties in Continental's position to recover on a general contractor's bond but not on a subsidiary bond from the subcontractor to the general contractor. See generally *Graybar Elec. Co.* v. *Continental Cas. Co.,* 50 N.J. Super. 289 (1958); *Maine Bonding & Cas. Co.* v. *Foundation Constructors,* 105 N.H. 470 (1964); *Acoustics, Inc.* v. *Hanover Ins. Co.,* 118 N.J. Super. 361 (1971); *Amelco Window Corp.* v. *Federal Ins. Co.,* 127 N.J. Super. 342 (1974). Furthermore, Continental's reliance on §§ 165 & 166 of the Restatement of Security (1941) is misplaced. Our statutory double bond system does not precisely fit either of the situations described in those sections. By analogy, however, the bond under G. L. c. 149, § 29, explicitly creates third-party beneficiary rights while the bond under G. L. c. 149, § 44H, explicitly excludes them "because there is no indicated purpose to benefit [a third party]." Restatement of Security, *supra* § 166, Comment a.

2. There remains for brief discussion whether the recent decision in *Choate, Hall & Stewart* v. *SCA Servs. Inc.,* 378 Mass. 535 (1979), enhances Continental's position. That case swept aside many cobwebs that had been spun around our third party beneficiary rules and allowed third parties found to be intended creditor beneficiaries of a contract to seek its enforcement.[8] *Choate, Hall & Stewart* does not apply here because the terms of the promised performance in American's bond are restricted by G. L. c. 149, § 44H, to benefit the general contractor, a circumstance which excludes claimants such as Continental at the threshold from intended beneficiary status. See 4 Corbin, Contracts § 800 at 173-177 (1951); 2 Williston, Contracts §§ 402 & 403 (3d ed. 1959). See also *Choate, Hall & Stewart* v. *SCA Servs. Inc., supra* at 545 n.17. Thus, the *Choate, Hall & Stewart* decision was not meant to be a vehicle to disrupt the symmetry of the relevant provisions of c. 149 or to create new levels of risk not contemplated by § 44H or bargained for by the parties.

The defendants may move in the Superior Court for the entry of a judgment which (a) finds Salvo indebted to Continental in the amount of $7,390 and (b) finds for American in Continental's claim on its bond with Salvo.

*Appeal dismissed.*

---

[8] The difference between intended and incidental beneficiaries is defined in Restatement (Second) of Contracts § 133 (Tent. Draft No. 3, 1967).