IDAHO FOREST INDUSTRIES, INC., AN IDAHO
CORPORATION, APPELLANT, V. THE MINDEN EXCHANGE
BANK & TRUST COMPANY, APPELLEE.

326 N.W.2d 176

Filed November 12, 1982.   No. 44508.

Luebs, Dowding, Beltzer, Leininger & Smith, for appellant.

Jerry C. Stirtz and Martin, Stirtz & Martin, for appellee.

William B. Brandt of Brandt & Horan, for amicus curiae Nebraska Bankers Assn.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

BOSLAUGH, J.

On December 20, 1977, Gemini Housing Corporation issued its check in the amount of $19,756.39 drawn on its account in The Minden Exchange Bank & Trust Company of Minden, Nebraska, the defendant. On December 22, 1977, it issued its check in the amount of $10,620.06 drawn on the same account. Both checks were payable to the plaintiff, Idaho Forest Industries, Inc.

The plaintiff deposited the checks in its account in the Bank of Idaho at Boise, Idaho. The checks were forwarded through normal banking channels to the defendant, which returned them to the Bank of Idaho unpaid with a notation that the checks were drawn on uncollected funds.

On January 12, 1978, the Bank of Idaho notified

the plaintiff that payment had been refused and charged the checks back against the plaintiff's account.

The Bank of Idaho then stamped "FOR COLLECTION ONLY" on the backs of the checks and sent them to the defendant by mail with a transmittal letter which stated: "PLEASE MAKE SEPARATE REMITTANCE OR CREDIT FOR THIS COLLECTION AS INDICATED BELOW, MENTIONING COLLECTION NUMBER." The letter further stated: "Hold 10 days if necessary"; "Deliver documents only on payment"; and "Advise non-payment by mail."

On February 1, 1978, the Bank of Idaho sent a "TRACER" to the defendant, which requested the defendant to "investigate and report" concerning the "undernoted collections," which were the two Gemini checks. The defendant reported: "Items received. Funds insufficient to cover. Company closed."

On April 20, 1978, the Bank of Idaho sent a second "TRACER" to the defendant, which requested the defendant to "PLEASE PAY OR RETURN CHECKS." The defendant then returned the checks to the Bank of Idaho.

On the above facts, which are undisputed, the plaintiff claims the defendant was strictly liable to the plaintiff for the amount of the checks. The trial court found generally for the defendant. The plaintiff has appealed.

The plaintiff's theory of the case is based upon the "midnight deadline" rule applicable to demand items presented to payor banks. See Neb. U.C.C. § 4-302 (Reissue 1980). The plaintiff argues that absent an agreement that the defendant bank was to hold the checks for collection for a reasonable time until funds became available, the defendant became absolutely liable to the plaintiff for the amount of the checks when it failed to pay, return, or send notice

of dishonor before the "midnight deadline," or within 10 days thereafter.

In *Western Air & Refrigeration v. Metro Bank of Dallas,* 599 F.2d 83 (5th Cir. 1979), a case involving somewhat similar facts, the U.S. Court of Appeals, Fifth Circuit, held that a payor bank was not liable under § 4-302 for a check left with it for collection. In the *Western Air* case the check was dishonored for insufficient funds when presented at the bank by the payee. After discussion with the officers of the bank and of the drawer, the payee left the check at the bank to be paid when sufficient funds were in the account. The court held that under these circumstances the check was not presented as a demand item. The court said: "The discussion in the afternoon, concluded by Furnish's leaving the Boat Harbor check with Metro, did not constitute a demand for payment from the payor bank. The receipt that Furnish received in exchange for the check stated that the check would be held for collection and that Boat Harbor was the payor. The receipt makes clear that both Western Air and Metro were looking to Boat Harbor for the funds to pay the check. This case is similar to *Kirby v. Bergfield,* 186 Neb. 242, 182 N.W.2d 205 (1970). There the holder of a demand item called the payor bank and asked if there were sufficient funds in the drawer's account to cover the check. The payee argued that this constituted a presentment. The court disagreed, concluding that '[t]he telephone call in this case constituted an inquiry as to circumstances which might indicate whether the check would or would not be paid upon future presentment in due course. It was not a presentment and demand for payment envisioned by section 3-504.' *Id.* at 247, 182 N.W.2d at 208. The court required an immediate demand for payment. A step preliminary to that present demand for payment did not constitute a presentment. In this case, leaving the check with Metro was a preliminary

step. The parties knew that until Harbor Boat deposited funds sufficient to cover the check issued to Western Air, Metro would not pay the check. Leaving a check with a bank with this type of understanding is not a present demand for payment and not a presentment within the meaning of § 3-504. . . . The facts which lead us to the conclusion that there was no presentment also lead to a conclusion that the parties agreed under § 4.103 that the midnight deadline of § 4.302 did not apply to the transaction in this case." *Id.* at 88-89.

In *David Graubart, Inc. v. Bank Leumi Trust,* 48 N.Y.2d 554, 399 N.E.2d 930, 423 N.Y.S.2d 899 (1979), a case involving facts much more favorable to the plaintiff, the Court of Appeals of New York held the payor bank was not liable to the payee under § 4-302. In the *Graubart* case the check, which had been dishonored for insufficient funds, was returned to the payor bank with these instructions: "Return immediately if not paid unless otherwise instructed," and "remit cashier's check when paid." The check was not returned to the depositary bank until after 7 banking days had elapsed.

The decision in the *Graubart* case was based upon a finding that an agreement existed to suspend the "midnight deadline" rule between the depositary bank and the payor bank as a result of banking custom and the "advice to customer" slip which accompanied the check and contained the special instruction. The court said: "Further, in this case the reasonableness of the suspension of the midnight deadline is demonstrated by an examination of the underlying purpose of the rule. . . . These concerns, however, are irrelevant to any evaluation of the custom followed under the agreement between the banks here. It creates no provisional credits that must be firmed up, and the payee can only collect when the payor bank remits its cashier's check, thus signifying that the drawer's account received suf-

ficient funds to cover the check. By its nature, the procedure singles out the item as an exceptional one; no transferor will assume it has been paid until specific notice is received.

"Moreover, the concept of a midnight deadline is not compatible with any approach under which the payor bank seeks to wait for the deposit of funds in the drawer's account. The reasonableness of such a banking custom must, therefore, be measured on its own terms. We conclude that this criterion is met when a depositary bank takes a possibly worthless instrument and directs the payor bank to adopt a technique that may provide the only chance for collection.

"There is nothing unfair about this procedure. It is calculated to produce satisfied obligations in many instances where legal recourse, with all its attendant expense, inconvenience and uncertainty, would otherwise be necessary. Furthermore, the payee here cannot claim it was injured by its reliance on the payor bank's silence after receipt of the item; the prior dishonor provided adequate warning of the questionable safety of the instrument. In any event, the payee's right to sue the drawer on the underlying obligation was revived upon the first dishonor, and representment in no way cut short that prerogative (Uniform Commercial Code, § 3-802, subd. [1], par. [b]; § 4-301, subd. [3]; *Blake v. Woodford Bank & Trust Co., supra,* pp. 598-599).

"We therefore hold that the payor bank's adherence to the depositary bank's instructions for processing the drawer's check does not render it liable to the payee under section 4-302. Accordingly, the certified question should be answered in the negative, the order of the Appellate Division reversed, and summary judgment granted in the defendant's favor on the fourth cause of action." *Graubart* at 935-36, 423 N.Y.S.2d at 904-05.

The plaintiff concedes that the effect of the provi-

sions of article 4 may be varied by agreement. See Neb. U.C.C. § 4-103 (Reissue 1980). There is no issue as to negligence, ordinary care, or lack of good faith because there is no contention that there were sufficient funds in the Gemini account at any time after January 12, 1978, from which the checks could have been paid. The plaintiff relies upon strict liability, and only strict liability, under the statute.

We think the facts and circumstances in this case indicate that an agreement or understanding existed between the parties that the checks were to be held for collection by the defendant for a reasonable time until funds became available.

When the checks were returned to the Bank of Idaho the first time, that bank immediately charged them back against the account of the plaintiff and notified the plaintiff that the checks had been dishonored. The Bank of Idaho then returned the checks to the defendant "for collection" with instructions to "hold for 10 days if necessary." This was a clear indication that the Bank of Idaho did not want the checks to be returned unpaid before the midnight deadline.

The "TRACER" sent on February 1, 1978, did not request the defendant to return the checks to the Bank of Idaho. The defendant was requested only to investigate and report concerning the "undernoted collections." Not until April 20, 1978, when the second "TRACER" was sent to the defendant, did the Bank of Idaho request that the checks be returned. Upon receipt of this request the defendant promptly returned the checks to the Bank of Idaho.

The record sustains the finding of the trial court that the defendant was not liable to the plaintiff for failure to return the checks to the Bank of Idaho before the midnight deadline or within 10 days thereafter. The judgment of the District Court is affirmed.

AFFIRMED.