**ATLANTIC CEMENT CO., INC., Plaintiff, Appellant,**

v.

**SOUTH SHORE BANK, Defendant, Appellee.**

No. 83–1685.

United States Court of Appeals, First Circuit.

Argued Feb. 9, 1984.

Decided March 28, 1984.

Peter A. Biagetti, Boston, Mass., with whom Patrick J. Sharkey, and Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, Mass:, were on brief, for plaintiff, appellant.

William F. Macauley, Boston, Mass., with whom A. Van C. Lanckton, Nicholas C. Read, and Craig & Macauley P.C., Boston, Mass., were on brief, for defendant, appellee.

* Of the District of Maine, sitting by designation.

Before COFFIN and ALDRICH, Circuit Judges, and GIGNOUX,* Senior District Judge.

BAILEY ALDRICH, Senior Circuit Judge.

For some years plaintiff Atlantic Cement Co., Inc., a Delaware corporation with its principal place of business in Connecticut, had a regular customer, Marshfield Sand and Gravel, Inc. Since November, 1981 Marshfield was allowed an open account. It paid monthly, before the 10th of the month following, in order to receive a discount, usually by check drawn on defendant South Shore Bank. According to plaintiff's complaint Marshfield's check drawn on April 9, 1982, in the amount of $44,166.75, in payment for March deliveries, was deposited by plaintiff in its Connecticut bank on April 19, and was returned on April 28, stamped Insufficient Funds. Plaintiff telephoned Marshfield and was told that there were funds and that the check would be honored, and, accordingly, redeposited it.

On May 3 plaintiff's bank received the check back, again marked Insufficient Funds. Plaintiff telephoned defendant and was told that there always had been funds, but that they were tied up by Marshfield's agreement with certain creditors, and that the check would not be honored. Plaintiff alleges that, as a non-party, it should not have been affected by this agreement. Marshfield shortly ceased doing business, and later that month was petitioned into bankruptcy. Defendant claimed as a secured creditor in the bankruptcy proceeding. It was not asserted that plaintiff's cement was part of the security.

During April, but prior to April 28, plaintiff had shipped additional cement to Marshfield, to the value of $45,136.36. For this it did not receive a check; nor is there any allegation that there would have been funds to cover one. Plaintiff, however, seeks to recover $89,302.11 from defendant.

In count one plaintiff alleges that, "by its maintenance of a checking account on behalf of Marshfield, the Bank agreed to make payment on all of [Marshfield's] checks ... to the intended beneficiaries, *i.e.*, payees, of said checks," unless "rightfully" dishonored; that defendant's "knowing and wrongful failure" to pay plaintiff's check "breached its obligation to Marshfield, and to Atlantic as the intended payee of that check." Count two repeated the allegations of count one, and alleged that non-payment of the check was a "willful and deliberate" violation of Mass.G.L. c. 93A §§ 2 and 11, and was "for the single purpose of continuing in wrongful possession of funds deposited by Marshfield into its checking account."

On motion, the court dismissed both counts, with a memorandum opinion fully explaining their lack of merit.

After these counts were dismissed, plaintiff sought to amend by adding what we will call count three, for "money had and received," asserting that defendant refused to honor "the check ... because its release of any funds maintained by Marshfield ... [Marshfield being insolvent at the time] would have reduced the likelihood that Marshfield could discharge its indebtedness to defendant." With commendable forthrightness the court denied the amendment as being without merit, rather than as a matter of discretion. We will, accordingly, consider its merits, if any, as being before us.

█ We find all counts to be singularly devoid of merit. The relationship of depositors (drawers), banks (drawees) and payees of checks is fully determined by the Uniform Commercial Code, Mass.G.L. c. 106. For present purposes, the controlling section is 3–409(1).

*Draft not an Assignment* (1) A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts ·it.

This statute is a clear rejection of plaintiff's third party beneficiary "common law" conception that a payee should be allowed to sue the drawee if the drawee violated an obligation to the drawer. This was not even the common law, and this is not the type of common law change effected by *Choate, Hall & Stewart v. SCA Services Corp.*, 378 Mass. 535, 392 N.E.2d 1045 (1979). *See Continental Bronze Co. v. Salvo & Armstrong Co.*, 8 Mass.App. 799, 397 N.E.2d 1143, 1146 (1979); *Carr v. National Security Bank*, 1871, 107 Mass. 45. There are many reasons for this rule, but one basic reason has long been to permit an unaccepting drawee to avoid disputes with other than the drawer. *See, e.g., Bullard v. Randall*, 1 Gray 605 (67 Mass.) (1854).

A payee of a check must be presumed to know the statute. Plaintiff, however, precisely contrary thereto, alleges that the "checks' explicit representation that their full amounts were 'Payable at South Shore Multibank'" "acknowledged an agreement" effected by the "maintenance of a checking account," creating an "obligation to Marshfield, and to Atlantic as the intended payee," to pay if there were funds available and the drawer had not stopped payment. It adds, as an admittedly "extraordinary" special reason for this, that Marshfield was indebted to the defendant.

We find nothing extraordinary about the facts. The statute speaks for itself. Plaintiff alleges no special agreement by the bank to accept its checks, nor does it advance possible consideration for such an agreement. Passing, for the moment, the matter of the special reason's relevancy, it must be an everyday occurrence for depositors to be indebted to their banks in some connection. That this should contradict the statutory provision is little short of preposterous.

What would seem to us extraordinary are not the facts, but that plaintiff should claim a substantial exception in a clear and unambiguous statute. In some 40 pages of brief, reply brief, and uninvited post-argument letter, plaintiff furnishes nothing even suggesting such a result, other than its ipse dixit assertion that the court's "strict application of the UCC was unsup-

portably myopic," and "extraordinarily unfair." It was neither.

■ As to count two, Mass.G.L. c. 93A requires an unfair or deceptive act, plus reliance and injury. Plaintiff would have it that there were "heinous deceptions;" that it was "lured .... into relying on an established course of usual and legitimate business conduct," and that "in reliance on the Bank's continued performance of its obligation to Marshfield under their checking account agreement," "upon which Atlantic had come to rely," it extended credit and fell victim to "the Bank's deliberately unfair and deceptive trade practices," "a full-blown scheme of extraordinary deceit and breach of duty." When the smoke is blown away, this is simply that plaintiff would regard a defendant's honoring checks in the past as constituting a representation that it would continue to do so. Millions of checks clear every day; are the banks thereby setting themselves up as guarantors to their depositors' future creditors? This cannot be possible. Barring something other than the mere act of acceptance, there is no representation to a payee except that the bank will pay the check it has accepted. Chapter 93A cannot convert the mere act of honoring a check into a representation as to the future.

■ Plaintiff asserts that it was a misrepresentation to mark the check Insufficient Funds when in fact there were funds and the creditors' agreement, allegedly, did not foreclose payment. To the extent that Insufficient Funds was a misrepresentation, as distinguished from a more general assertion that the bank was declining to pay, it was an irrelevant one. Plaintiff has not suggested how any other expression would have improved its position. Reliance and injury being necessary Chapter 93A ingredients, it points to no conceivable detrimental action it took as a result of, let alone in reliance upon, any of the bank's "deceptions." If Chapter 93A may ever

apply to conduct that is strictly in accord with the U.C.C., *but cf. Levings v. Forbes & Wallace, Inc.*, Mass.App.1979, 396 N.E.2d 149, 153, this could not be such a case.

As to count three, which we reach on the assumption that plaintiff has no case under counts one and two, plaintiff would have it that a creditor who has a fund out of which it may satisfy a debtor's indebtedness to itself, is "wrongful and inequitable" if it declines to turn it over to some other creditor whose rights are no higher. Alternatively, if we understand this count, plaintiff reasons that by delivering goods to Marshfield on credit, it benefited all of Marshfield's other creditors; that this benefited defendant as one of these creditors—not, of course, to the full amount, and how at all, if it was secured?—and that therefore defendant was accountable, as for "money had and received," for the full amount. For nonpayment thereof defendant is a "jackal," guilty of "manifest ... rascality."

Conveying goods to Marshfield on credit was solely plaintiff's choice. Nothing the bank did caused plaintiff's November 1981 shift to an open account, or merits its fulsome derogatory language. Plaintiff's words may be a welcome change from some we hear on the street, but they are otherwise of no consequence. The judgment is affirmed and, because appellee was required to defend this totally frivolous appeal, it is awarded double costs.[1]  F.R. A.P. 38.

---

**1.** One member of the panel is of the opinion that counsel fees should also be awarded, and believes that the court's increasing caseload will call for such response in the future. It is a burden on everyone to take the court's time with appeals with no conceivable substance behind them.