STAUFFER SEEDS, INC., A MINNESOTA CORPORATION, APPELLANT, V. NEBRASKA SECURITY BANK, DESHLER, NEBRASKA, A NEBRASKA CORPORATION, APPELLEE.

386 N.W.2d 2

Filed May 2, 1986.   No. 84-916.

Gerald D. Warren of Whitney, Newman, Mersch, Otto & Warren, for appellant.

Joseph H. Murray of Germer, Koenig, Murray, Johnson & Daley, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

This case arises out of a dispute concerning a check in the amount of $10,000 drawn on the account of Larry Heinrichs in the defendant, Nebraska Security Bank, and payable to the plaintiff, Stauffer Seeds, Inc.

The plaintiff deposited the check in its bank, Farmers State Bank & Trust Co. It was received by the defendant in a federal cash letter on or about December 31, 1982. Since the funds in the Heinrichs account were insufficient to pay the check, it was marked "insufficient funds" and returned to the plaintiff's bank on January 3, 1983, the next business day.

The depositary bank then resubmitted the check by mailing it directly to the defendant, accompanied by a notice instructing the defendant to handle the check for collection. The notice sent with the resubmitted check contained the following language. In the upper left-hand corner there was an "X" typed in front of the statement "WE ENCLOSE THE FOLLOWING ITEM(S) FOR COLLECTION AND RETURNS WHEN ACTUALLY PAID." In a box entitled "DUE," the collecting bank had typed "Soght [sic]," and under "SPECIAL INSTRUCTIONS," the statement "Please remit by your draft" was typed.

On January 6, 1983, the defendant bank received the resubmitted check together with the depositary bank's instructions. On January 7, 1983, a deposit was made to the account of Larry Heinrichs in the amount of $29,766.65. At that time Heinrichs was indebted to the defendant for a sum in excess of $200,000. Upon receipt of the deposit the defendant bank exercised its right of setoff to the entire sum deposited.

On February 1, 1983, the defendant closed the Heinrichs

account, marked the collection letter "insufficient funds," and returned it to the plaintiff's bank.

The plaintiff commenced this action to recover the amount of the check. The trial court found that the case was controlled by our decision in *Idaho Forest Industries, Inc. v. Minden Exch. Bank & Trust Co.*, 212 Neb. 820, 326 N.W.2d 176 (1982), and entered judgment for the defendant. The plaintiff has appealed.

The plaintiff's theory of the case is that the defendant bank was accountable under Neb. U.C.C. § 4-302 (Reissue 1980) for violation of the midnight deadline rule after the check had been resubmitted and because a deposit sufficient to cover the check had been made after the defendant had received the resubmitted check. The plaintiff contends the trial court erred in finding (1) that the midnight deadline rule did not apply, (2) that the language on the notice sent with the re-presented check came within the direction of the decision in *Idaho Forest Industries, supra*, (3) that the re-presented check was not a demand item, and (4) that the defendant bank acted in good faith when it exercised its right of setoff in favor of a third party while failing to pay plaintiff's check which was being held when a sufficient deposit was made.

A check returned for insufficient funds can be re-presented to the payor bank and upon such re-presentment is still a demand item subject to the midnight deadline rule. See *Graubart v Bank Leumi Trust*, 48 N.Y.2d 554, 399 N.E.2d 930, 423 N.Y.S.2d 899 (1979). See, generally, Annot., 22 A.L.R.4th 10 (1983). However, the provisions of the U.C.C., including the midnight deadline rule, may be modified by agreement of the parties. Neb. U.C.C. § 4-103 (Reissue 1980). See *Graubart, supra*.

In *Idaho Forest Industries, supra*, the issue was whether the defendant bank was strictly liable for violating the midnight deadline rule by following the instructions on a collection memorandum sent to the payor bank with a previously returned check. We held that the defendant bank was not liable because the midnight deadline rule had been waived by agreement of the parties. The agreement consisted of the instruction memorandum which accompanied the re-presented

item and stated, "Hold 10 days if necessary"; "Deliver documents only on payment"; and "Advise nonpayment by mail." *Idaho Forest Industries, supra* at 821, 326 N.W.2d at 177.

We relied on *Western Air & Refrigeration v. Metro Bank of Dallas*, 599 F.2d 83 (5th Cir. 1979), and *Graubart, supra*, cases in which the midnight deadline rule had been suspended by agreement of the parties. The language on the notice in the present case is nearly identical to that on the instruction memo accompanying the re-presented item in the *Graubart* case. Both notices or memos indicate that the item is to be returned "when paid" and direct how the funds are to be remitted after the check has been paid.

The *Idaho Forest Industries* case is controlling so far as the plaintiff's first contention is concerned. The defendant bank cannot be held accountable under § 4-302 for the amount of the re-presented check because the midnight deadline rule was waived by the language on the notice instructing the defendant bank as to the handling of the resubmitted check.

The plaintiff's other contention is that the defendant should be held accountable for lack of good faith and exercise of ordinary care. The plaintiff contends there is evidence of bad faith because the defendant bank debited the Heinrichs account in favor of a third party while failing to pay the plaintiff's check which was then being held. However, the evidence is uncontroverted that the defendant bank in fact set off the entire sum of the January 7 deposit. Then, after having exercised its right of setoff, the bank gave a portion of the proceeds to a third party. The parties stipulated,

> That on January 7, 1983 a withdrawal from that account was made by The Nebraska Security Bank in the amount of $29,766.65 and of that amount $14,883.33 was paid to The Nebraska Security Bank to reduce indebtedness of Larry Heinrichs and $14,883.32 was paid to Superior Deshler, all as accurately reflected by a true and correct copy of a debit memo which is attached hereto as Exhibit "E" and made a part hereof by this reference.

There was some evidence that the $29,766.65 check represented proceeds from a corn crop upon which

Superior-Deshler Company held a lien for fertilizer supplied to Heinrichs.

A bank may set off the funds of a depositor to pay a debt due the bank from the depositor. Neb. U.C.C. § 4-303 (Reissue 1980); *State, ex rel. Davis, v. Farmers & Merchants Bank*, 114 Neb. 378, 207 N.W. 666 (1926).

The issue here is who had priority as between the parties to this lawsuit with respect to the deposit made to the Heinrichs account. Resolution of this issue does not depend upon the propriety of the defendant's actions following the setoff or the rights of a third party not a party to this action.

The plaintiff concedes that "[w]hether or not that exercise of set off [was] appropriate is not disputed by the Plaintiff." Brief for Appellant at 18. There is no evidence that the defendant bank violated any U.C.C. priority rules as to the prescribed order in which items may be charged or certified. See § 4-303. Nor is there evidence that the failure to pay the re-presented check upon sufficient deposit, in and of itself, constituted bad faith.

The judgment of the district court was correct, and it is affirmed.

AFFIRMED.

WHITE, J., concurring.

Nebraska Security Bank, like all banks in this state, maintains a debtor-creditor relationship with its depositors. A bank's contract with its depositor drawer is to pay all items that are "properly payable." Neb. U.C.C. § 4-401 (Reissue 1980). Upon breach of this obligation a bank's liability runs to its customer. Neb. U.C.C. § 4-402 (Reissue 1980).

A bank has no obligation to a payee or other holder unless the bank "signs" the check, either by acceptance or certification. Neb. U.C.C. § 3-401(1) (Reissue 1980) ("No person is liable on an instrument unless his signature appears thereon"). Absent special circumstances not present in this case, a check is not an assignment to the payee of the debt owed by the bank. Neb. U.C.C. § 3-409 (Reissue 1980). *Atlantic Cement Co. v. South Shore Bank*, 730 F.2d 831 (1st Cir. 1984). This is so even if the depositor and payee arrange by contract to have the check operate as an assignment, if the bank has no

knowledge of the agreement. Even with such knowledge, a bank's duties to a third party are derived only from its duties to the depositor, and any claim a third party might have against the bank is subject to the bank's claims against the depositor. *People's Nat. Bank v. Swift*, 134 Tenn. 175, 183 S.W. 725 (1915).

In this case Nebraska Security Bank never accepted or certified the check held by Stauffer Seeds. After Heinrichs deposited $29,766.65 in his account on January 7, 1983, Nebraska Security properly exercised its right of setoff. At no point in the transactions did a duty on the bank's part arise to Stauffer Seeds, the payee of the dishonored check. Nothing in the Uniform Commercial Code prevented the bank from then transferring its funds to the third-party lienholder.

SHANAHAN, J., joins in this concurrence.