First National Bank, Stromsburg, Nebraska, a
corporation, Appellee, v. Benedict Consolidated
Industries, Inc., and Ronald L. Baker, Appellants, Robert
W. Baker and William E. Reetz, Appellees.

402 N.W.2d 259

Filed March 13, 1987.   No. 85-713.

Richard F. Welling and Alan M. Thelen of Breeling, Welling, Place & Steier, for appellants.

Ward F. Hoppe of Mattson, Ricketts, Davies, Stewart & Calkins, for appellee First National Bank.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

KRIVOSHA, C.J.

The First National Bank, Stromsburg, Nebraska (First National), filed suit against Benedict Consolidated Industries, Inc. (BCI), and Robert W. Baker, Ronald L. Baker, and William E. Reetz, as guarantors of a certain note executed and delivered by BCI to First National in the principal sum of $70,894.03. The note provided on its face that it was initially due on February 13, 1982. The note further provided on its face, "Sureties, endorsers and guarantors consent that time of payment of this note or any part thereof may be extended from *time to time without notice.*" (Emphasis supplied.) The reverse side of the note signed by the guarantors reads as follows:

> For value received the endorsers of this note hereby guarantee the validity thereof, the genuineness of the signatures thereto and *the payment thereof* at maturity or at any time thereafter, waiving demand, notice on non-payment, protest *and all defenses by reason of extending the time of payment* or delay in bringing suit.

(Emphasis supplied.)

Following a trial to the court, a jury having been waived, judgment was entered in favor of First National and against all of the defendants in the sum of $93,839.15 plus accruing interest. It is from this judgment that BCI and Ronald Baker appeal to this court. Jointly, they allege that the district court erred in rendering judgment for one or more of the following reasons. (1) The guarantors, including Ronald Baker, were

discharged from liability because the time of payment on the note was improperly extended. (2) The original debt was extinguished by agreement of the parties. (3) First National failed to take sufficient steps to collect the debt from BCI before pursuing the guarantors. (4) The district court failed to properly set off certain sums on deposit with First National against the principal debt involved in this action. We have reviewed the record and have concluded that the judgment of the trial court is in all respects correct and should be affirmed.

The appellants' first assignment of error is based upon their argument that the time of payment of the note was extended to April 21, 1982, more than 31 days beyond the original maturity date of the note. Indeed, there is language on the reverse side of the note which reads, "Extend to 4-21-82 Robert W. Baker." Appellants then cite to us the provisions of Neb. U.C.C. § 3-606(1) (Reissue 1980), which reads in part as follows: "The holder discharges any party to the instrument to the extent that without such party's consent the holder (a) without express reservation of rights . . . agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person . . . ." Appellants then argue that since there was an extension of the time of payment, it must be shown that the extension was within the authority granted by statute or the endorser is discharged. Subject to certain exceptions, Neb. U.C.C. § 3-118(f) (Reissue 1980) limits the time payment may be extended. Section 3-118(f) provides in part: "Unless otherwise specified consent to extension authorizes a single extension for not longer than the original period." Appellants then maintain that in view of the fact that this extension was from February 13, 1982, until April 21, 1982, and was longer than the original period, i.e., 31 days, the extension was unauthorized and, therefore, the individual guarantors are discharged. The difficulty with their argument is that, while they correctly cite the law, they ignore the facts. Both §§ 3-606(1) and 3-118(f) provide, in effect, that the statutes as written apply unless there is an agreement by the parties to the contrary. In the instant case the document, on its face, reflects an agreement to the contrary. To begin with, the face of the note provided that the note could be extended "from time to time

without notice." It seems clear that this constitutes express consent to extend time of payment for more than 31 days. But more important than all of that is the language of the guaranty itself, found on the reverse side of the note. By signing the note as guarantor, Ronald Baker specifically agreed to waive "all defenses by reason of extending the time of payment." It is difficult to imagine what more encompassing statement could be made by a guarantor in indicating consent that time of payment may be extended without restriction than to waive "all defenses by reason of extending the time of payment."

Appellants argue that we have held to the contrary, citing to us *Citizens State Bank v. Beermann Bros. Dehy*, 188 Neb. 597, 198 N.W.2d 458 (1972). *Citizens State Bank*, however, has no application to the instant case. In *Citizens State Bank* we held that language providing that "time of payment may be extended without notice thereof," *id.* at 599, 198 N.W.2d at 459, provided for but a single extension no longer than the original period of the note pursuant to § 3-118(f). The language of the note in the instant case is not at all like the language found in the *Citizens State Bank* case. To begin with, on the face of the note it is provided not only that time of payment may be extended without notice thereof but, also, that such extension may be "extended from time to time without notice." This language obviously implies more than a single extension and is obviously intended to meet the very problem raised by our decision in *Citizens State Bank, supra*.

Additionally, as we have already noted, the language of the guaranty itself provides that Ronald Baker waives "all defenses by reason of extending the time of payment." We read that language to mean that even if Ronald Baker had a defense under § 3-118(f), he agreed to waive that defense and therefore cannot now defend on the grounds that he was discharged by reason of an unauthorized extension of time of payment. Having waived such a defense, if indeed one existed, Ronald Baker remained liable on the guaranty. A guarantor is not discharged by an extension of time for payment or performance of the principal obligation if he consents thereto, as where the contract of guaranty expressly or impliedly provides for the extension. See *First Nat. Bank v. Bolzer*, 221 Neb. 415, 377

N.W.2d 533 (1985).

Were we to hold that Ronald Baker was discharged, we, in effect, would be deleting from the guaranty the very language of the guaranty itself. In the instant case the evidence is satisfactory that in executing the guaranty the guarantors consented to more than one extension of the time of payment and waived any defense they had in that regard. For that reason the first assignment of error must be overruled.

The second assignment of error is based upon the argument that the note itself was discharged. In support of the argument Ronald Baker and BCI point out that in the upper left-hand corner there appears the number "10808." A line is then drawn through that number and above it the following appears: "50-10830 replaces." BCI and Ronald Baker then argue that this language signals an intent by the parties to generate a new loan with "possibly new terms." Brief for Appellants at 10. Further, BCI and Ronald Baker argue: "Thus, something happened between March 9, 1982, and April 6, 1982, that had the effect of generating a new loan number and of giving the $70,894.03 debt a 'current' status." Brief for Appellants at 11. The difficulty with this argument is that the parties who have the burden of establishing this defense (BCI and Ronald Baker) have failed to produce any evidence to support their contention. In support of appellants' position they cite to us the case of *First West Side Bank v. Herzog*, 204 Neb. 356, 282 N.W.2d 38 (1979). In that case we said at 360-61, 282 N.W.2d at 41: " 'The taking of a new note for an existing note is a renewal of the old indebtedness, and not a payment of the debt, unless there is a specific agreement between the parties that the new note shall extinguish the original debt.' " Appellants then argue to us: "The evidence in the present case indicates that some such subsequent agreement occurred between the Bank and Robert Baker, acting for BCI." Brief for Appellants at 12. If there was some subsequent agreement, it was incumbent upon BCI and Ronald Baker to produce that evidence. The record in this case is silent as to any such subsequent agreement, and the mere fact that some bookkeeping notation appears on the note is insufficient to establish that "there is a specific agreement between the parties that the new note shall extinguish the

original debt."

Aside from the fact that the defendants did not allege in their amended answer that the note was canceled by some subsequent agreement, they did not prove that the note was canceled by some subsequent agreement. The burden of both pleading and proving affirmative defenses is upon the defendants, and when they fail to do so they cannot recover upon mere argument alone. See *Center Bank v. Mid-Continent Meats, Inc.*, 194 Neb. 665, 234 N.W.2d 902 (1975). There is simply no basis upon which the appellants' second assignment of error could be sustained. It is therefore overruled.

The third assignment of error is likewise without merit. The argument advanced by BCI and Ronald Baker apparently is that the language found on the reverse side of the note is intended to guarantee collection and not payment and that, therefore, under the provisions of Neb. U.C.C. § 3-416 (Reissue 1980), before the holder may seek collection against the guarantors, it must first reduce its claim to judgment and seek execution which is returned unsatisfied or take such other action as provided for by § 3-416(2). The argument simply is without substance. The guaranty provides: "For value received the endorsers of this note hereby guarantee . . . the payment thereof at maturity or at any time thereafter . . . ." BCI and Ronald Baker argue that because they have guaranteed payment, not only at maturity, but "at any time thereafter," they did not guarantee payment at maturity and therefore could only be guarantors of collection and not of payment. Unfortunately, appellants are unable to cite any authority to us in support of their position. The reason for this inability, however, may be obvious. There simply is no basis for their position. The facts that the holder of a note may elect to sue promptly at maturity or at any time thereafter and the guarantors agree to pay at maturity or thereafter do not change the guaranty from one of payment to one of collection. The language could not be clearer. Each of the guarantors "guarantee[d] . . . the payment" of the note. With an unconditional guaranty of payment, the holder was not required to first seek collection or satisfaction against the maker, but was authorized to go directly against the guarantors. See *International Harvester Co. v. Schultz*, 102 Neb. 753, 169

N.W. 428 (1918). That is what an unconditional guaranty of payment means.

The last assignment of error likewise is of little benefit to BCI or Ronald Baker. The evidence discloses that First National offset moneys on deposit in an account in the name of BCI against various debts owed by BCI, including the note involved in this case. BCI and Ronald Baker argue that, first of all, "[t]he Appellee exercised a set-off against funds which belonged to a third person, and not the Appellant BCI." Brief for Appellants at 16. We are simply at a loss to understand how, even if true, this could be of any benefit to either BCI or Ronald Baker. While there may be some third persons who have claims against First National, that issue is simply not involved in this action. If moneys in BCI's account actually were moneys belonging to a third person, that person may have a right to make such a claim. Certainly BCI and Baker are not in a position to argue a third person's case. Furthermore, should we agree with BCI and Ronald Baker, the net result would be to increase their own indebtedness. The first prong of their argument must be disregarded.

The second prong is to the effect that First National applied some of the proceeds to loans of BCI other than the one on which Ronald Baker was a guarantor and, therefore, Ronald Baker should receive greater credit. The law in Nebraska is clear and to the contrary. We have long held that a bank may set off the funds of a depositor to pay a debt due the bank from the depositor, see, *Stauffer Seeds, Inc. v. Nebraska Sec. Bank*, 222 Neb. 594, 386 N.W.2d 2 (1986), and *State, ex rel. Davis, v. Farmers & Merchants Bank*, 114 Neb. 378, 207 N.W. 666 (1926), and, absent an agreement to the contrary or specific instructions from the debtor, a creditor may apply the proceeds to such debts and in such order as the creditor determines. See, *Diesel Service, Inc. v. Accessory Sales, Inc.*, 205 Neb. 381, 288 N.W.2d 258 (1980); *Fox v. Carman*, 139 Neb. 34, 296 N.W. 343 (1941). The district court committed no error in this regard.

For the reasons set out above, we find that the decision of the district court was in all respects correct, and the judgment must be affirmed.

AFFIRMED.