MIRACLE HILLS CENTRE LIMITED PARTNERSHIP, APPELLEE AND CROSS-APPELLANT, V. NEBRASKA NATIONAL BANK OF OMAHA, APPELLANT AND CROSS-APPELLEE.

434 N.W.2d 304

Filed January 20, 1989.   No. 86-1035.

Virgil J. Haggart, Jr., of Daub Haggart & Rebensdorf, for appellant.

James F. Fenlon and William G. Stockdale, of Harris, Feldman Law Offices, for appellee.

William B. Brandt and Robert J. Hallstrom, of Brandt, Horan, Hallstrom and Sedlacek, for amicus curiae Nebraska Bankers Association, Inc.

BOSLAUGH, SHANAHAN, and GRANT, JJ., and ENDACOTT and QUIST, D. JJ.

QUIST, D.J.

Plaintiff-appellee, Miracle Hills Centre Limited Partnership (Miracle Hills), sought an accounting from defendant-appellant, Nebraska National Bank of Omaha (bank), claiming the bank wrongfully converted funds deposited to an account that Financial Structures, Inc. (FSI), maintained with the bank. FSI was the general contractor on a construction project for Miracle Hills. In its petition, Miracle Hills asked the court to impose an implied trust on the deposit for the benefit of Miracle Hills and the subcontractors and materialmen on the Miracle Hills project.

The bank generally denied the allegations of Miracle Hills, claiming that the bank had rightfully set off against FSI's account to pay past-due FSI indebtedness owing the bank, in the amount of $86,625.69.

Each party filed a motion for summary judgment against the other. The district court ruled that the bank was not entitled to setoff and sustained the motion for summary judgment against the bank in the amount of $86,625.69. The district court also dismissed the bank's motion for summary judgment. The bank appeals and Miracle Hills cross-appeals, alleging error by the trial court in not allowing prejudgment interest. We reverse and remand with directions to enter judgment in favor of the bank.

The several assignments of error advanced by the appellant may be summarized as follows: (1) The trial court erred in dismissing the bank's motion for summary judgment because the bank had a common-law right of setoff against the FSI account, and no express or implied trust attached to the deposit

to the FSI account; (2) the trial court erred in sustaining Miracle Hills' motion for summary judgment because (a) the evidence is insufficient to show the bank was placed on "inquiry notice" and (b) the evidence is insufficient to sustain a finding that an express or implied trust was imposed upon the deposit to the FSI account; and (3) the trial court erred in finding that Miracle Hills' damages were liquidated.

A brief review of the facts is necessary. FSI maintained two checking accounts at the bank, a regular account and a payroll account. Deposits were made to the regular account, and checks were drawn on this account for payment of subcontractors on various projects, as well as for general overhead expenses. At the time in question, FSI was the general contractor on at least nine different construction projects.

At the time of the transaction that is the subject of this dispute, FSI was indebted to the bank on a promissory note in the amount of $84,867.37, plus interest. The note was past due and in default.

One of the FSI projects was the Miracle Hills Shopping Center. Miracle Hills was the developer, with construction financing provided by Westmark Financial Corporation. On September 10, 1985, the bank received for deposit by FSI Westmark's check payable to FSI in the amount of $129,208. No special instructions or limitations accompanied the check. At that time FSI's regular account had a balance of $51.87, and checks in excess of that amount had been presented for payment.

Westmark's check was drawn on the Douglas County Bank in Omaha. On learning that there was an insufficient balance in Westmark's account to cover the check to FSI, checks presented for payment were returned. On September 11, Westmark wire-transferred $129,208 to the Financial Structures account, No. 4003276, at the bank. The bank then honored checks presented for payment on that account, and also set off against the account in the amount of $86,625.69 to pay the principal and interest on FSI's past-due note. Some 6 weeks later, Miracle Hills made demand for the amount set off. The bank refused, and Miracle Hills commenced this action.

This is an action in equity, and this court reviews the record

de novo, reaching an independent conclusion under the pleadings and the evidence. *Brown v. Borland, ante* p. 391, 432 N.W.2d 13 (1988). The trial court heard no testimony in this case, as all the evidence was submitted in the form of affidavits and depositions.

It is undisputed that FSI's indebtedness to the bank was past due at the time of the setoff. This court dealt with that issue in *First Nat. Bank v. Benedict Consol. Indus.*, 224 Neb. 860, 866, 402 N.W.2d 259, 263 (1987), when we stated:

> We have long held that a bank may set off the funds of a depositor to pay a debt due the bank from the depositor, see, *Stauffer Seeds, Inc. v. Nebraska Sec. Bank*, 222 Neb. 594, 386 N.W.2d 2 (1986), and *State, ex rel. Davis, v. Farmers & Merchants Bank*, 114 Neb. 378, 207 N.W. 666 (1926), and, absent an agreement to the contrary or specific instructions from the debtor, a creditor may apply the proceeds to such debts and in such order as the creditor determines.

A party claiming that a deposit made in the ordinary course of business was a special deposit bears the burden of proving the special nature of the deposit by clear and satisfactory evidence. Until such a showing has been made, deposits made in the ordinary course of business are general deposits. *Glass v. Nebraska State Bank*, 175 Neb. 673, 122 N.W.2d 882 (1963). Miracle Hills has failed to provide clear and satisfactory evidence that the deposit in question was not a general deposit.

Miracle Hills argues that under the circumstances a duty was imposed upon the bank to see to it that the proceeds of the Westmark deposit were applied only for the payment of subcontractors on the Miracle Hills Shopping Center project. Miracle Hills contends that the bank had actual knowledge of the ownership of the funds and, at a bare minimum, sufficient knowledge to put the bank on inquiry as to the ownership of the funds.

In support of this contention, Miracle Hills cites *Globe Savings Bank v. National Bank of Commerce*, 64 Neb. 413, 89 N.W. 1030 (1902), and, generally, Annot., 8 A.L.R.3d 235 (1966).

However, a careful review of the evidence in this case

established neither actual knowledge nor notice of facts sufficient to put the bank on inquiry as to any special ownership of the funds.

Westmark's wire transfer states, "Please forward [$129,208] and notify Nebr Natl Bank Omaha for Financial Structures #4003276." Clearly, the wire transfer calls for an unconditional payment to FSI's general checking account. Westmark placed no limitation on the deposit and gave no indication to the bank that the deposit was to be used solely for payments on the Miracle Hills project. Therefore, there was no express trust imposed on the deposit.

The bank was subject to the duties and liabilities of a payor bank under the Uniform Commercial Code. See Neb. U.C.C. §§ 4-302 and 4-104(1)(h) (Reissue 1980). The record indicates the bank had no independent knowledge of which project any given check was connected with. If a trust were implied from these facts, the lack of such information would make it virtually impossible for the bank to meet its duties under the U.C.C. without subjecting itself to significant liability. Therefore, we find no implied trust existed.

Miracle Hills further argues that even if the bank did not have actual knowledge or inquiry notice, equitable principles would hold that the bank cannot set off the deposit when it has not changed its position and has no superior equities. In applying general equitable principles, it must be kept in mind that Miracle Hills is largely responsible for its own predicament. It failed to take steps which could have been taken to assure desired distribution of the funds. The simple expedient of issuing joint checks payable to FSI and the subcontractors or providing limitations or conditions on the deposit or account could have avoided the situation in which Miracle Hills now finds itself.

In view of the foregoing, it is not necessary to address the cross-appeal of Miracle Hills concerning the demand of the prejudgment interest.

REVERSED AND REMANDED WITH DIRECTIONS.