ANGELINE MIMICK, APPELLEE, V. BEATRICE FOODS
COMPANY, A CORPORATION, APPELLANT, IMPLEADED
WITH THE TRAVELERS INSURANCE COMPANY, A
CORPORATION, ET AL., APPELLEES.

93 N. W. 2d 627

Filed December 19, 1958. No. 34466.

*Chambers, Holland, Dudgeon & Hastings* and *Byron Reed,* for appellant.

*Cleo F. Robak* and *Wagner, Wagner & Conrad,* for appellee Mimick.

*Walter, Albert & Leininger* and *Frederick M. Deutsch,* for appellees The Travelers Ins. Co. et al.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Angeline Mimick, brought this action against defendant, Beatrice Foods Company, and others, seeking recovery of damages for personal injuries received when a milk dispenser, owned by and alleged to have been negligently installed and maintained on top of a bun warmer by defendant Beatrice Foods Company, fell therefrom down upon plaintiff while she was an employee of defendant, Lewis Frieze, in a cafe owned and operated by him. Lewis Frieze was made defendant as required by the workmen's compensation law.

For answer, Beatrice Foods Company, hereinafter called defendant, denied generally and specifically denied that it installed or maintained said milk dispenser. Defendant then admitted that plaintiff was employed by Frieze as alleged, and admitted that defendant owned the dispenser which it had delivered to the premises of Frieze, but alleged that the dispenser was in the exclusive custody and control of and was installed and maintained by Frieze or Pegler & Company, or both of them; and that if same were negligently installed and maintained, it was due to their negligence. Plaintiff's reply was a general denial.

A jury trial was had, and at conclusion of all the evidence defendant moved for a directed verdict or dismissal of plaintiff's action because the evidence was insufficient to sustain a cause of action in favor of plaintiff, and because there was want of any proof that defendant was negligent in any respect as alleged by plaintiff. However, defendant's motion was overruled, and upon submission to a jury, it returned a verdict awarding plaintiff damages against defendant, and judgment was rendered accordingly. Thereafter, defendant's motion for new trial or in the alternative for judgment notwithstanding the verdict and judgment was over-

ruled, and defendant, Beatrice Foods Company, appealed. In doing so, defendant assigned: (1) That the verdict and judgment were contrary to the evidence and law; and (2) that the trial court erred in overruling defendant's motion for directed verdict or dismissal, and in overruling defendant's motion for judgment notwithstanding the verdict and judgment. We sustain the assignments.

In Edgar v. Omaha Public Power Dist., 166 Neb. 452, 89 N. W. 2d 238, we recently reaffirmed that: "A motion for directed verdict or for judgment notwithstanding the verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the evidence.

"An appeal from an order of the district court granting (or denying) a motion for a judgment notwithstanding the verdict requires this court to consider the entire record and to determine whether it does or does not justify the action of the trial court.

"Where the facts adduced to sustain an issue are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the court to decide the question, as a matter of law, rather than submit it to a jury for determination."

We also reaffirmed in Wolcott v. Drake, 162 Neb. 56, 75 N. W. 2d 107, that: "The burden of proving negligence is on the party alleging it.

"Negligence is not presumed; the mere happening of an accident does not prove negligence.

"The burden of proving a cause of action is not sustained by evidence from which negligence can only be surmised or conjectured."

When considered in such light, the pertinent evidence as summarized, discloses the following: Frieze had

operated a new highway cafe at Columbus since March 9, 1955. His floor plans therefor had been provided by Pegler & Company, from whom he had purchased all his fixtures and equipment except a milk dispenser. When that company installed such fixtures and equipment, an electrically-heated bun warmer was purchased from it by Frieze and placed on the floor against the kitchen wall, according to plans. The bun warmer was a large, square, stainless steel cabinet, about 3 feet high, which, having adjustable legs, stood on the floor and contained three drawers which operated on some kind of bearings, but a flick, or quick opening or closing thereof, would cause some jar or vibration of the cabinet.

Frieze had made arrangements with defendant's general manager to buy, pay for, and use its dairy products, but defendant owned and agreed to deliver and furnish Frieze a milk dispenser for use in his cafe. Such dispenser was a large stainless steel cabinet which stood on four stainless steel cone-shaped legs about 1½ inches high. Such legs had plastic buttons about the size of a nickel on the bottoms thereof. The dispenser had room for two cans of milk and was equipped with faucets from which milk could be and was drawn by employees of Frieze and served to customers of his cafe. The cans of milk were placed in the dispenser daily except Sundays by an employee of defendant after the empty cans had been removed. The dispenser had been delivered to the cafe by employees of defendant during the time that other fixtures and equipment were being delivered and installed by Pegler & Company.

At the time the dispenser was delivered by defendant's employees, they asked Frieze where to locate it, whereupon an argument arose with regard thereto between Frieze and the representative of Pegler & Company. In that connection, Pegler & Company wanted the dispenser to be installed on top of the bun warmer as a perfect location, but Frieze did not agree thereto at that time, so, as directed, defendant's employees simply

placed the dispenser on the kitchen floor and left. However, subsequently the dispenser was placed on top of the bun warmer and against the kitchen wall by someone. The record does not show who so located it, but it is clear that no employee of defendant ever did so, and that Frieze and his employees knew at all times that it had been so placed. In that connection, milk dispensers in other cafes usually were located on top of tables or other comparable equipment.

When defendant's employee first delivered milk to the cafe, he found the dispenser located on the stainless steel top of the bun warmer, and thereafter no one ever noticed that there was anything unusual or wrong with its placement, although it was the daily duty of employees of Frieze not only to repeatedly take buns from the bun warmer but also to draw milk from the dispenser faucets, which were located about waist high. Employees of Frieze were also required to keep the dispenser clean and clean up around it. As a matter of fact, Frieze knew that the dispenser so placed was not fastened to the kitchen wall, and no average person would have noticed such fact or the fact that the bun warmer sloped slightly forward. It took careful examination by a person who was experienced with such installations to discover the latter fact. There were no defects in the dispenser itself, or in its location which would render it dangerous for the purpose for which it was furnished, and it was generally in the exclusive custody, possession, and control of Frieze, his agents and employees.

In that situation, plaintiff began her employment by Frieze as a waitress on March 9, 1955, although she had worked in his cafe 3 or 4 days previously while the fixtures and equipment were being installed. From March 9, 1955, until Sunday, April 17, 1955, plaintiff had worked as a waitress, and upon many occasions each day during that period she and other employees of Frieze as well had taken buns from the bun warmer

drawers and drawn milk from the dispenser to serve customers of the cafe. On April 17, 1955, during the noon hour, plaintiff opened a bun warmer drawer, took out some buns, then pushed the drawer shut, and thereafter, as she turned to leave, the dispenser slid off the bun warmer, knocked plaintiff down, and fell upon her. In that connection, when plaintiff was first examined by her physician at a hospital in Columbus, she told him that: "* * * she had been working at Louie's Cafe and she opened the door of a bun-warmer to take some rolls out, and, as she opened the door, there was enough apparent vibration or movement that the milk-dispenser, which was standing on the top of this bun-warmer, fell off of the bun-warmer onto the floor; and she attempted to get away from the falling object, but it struck her on the outer aspect of her lower right leg. She also fell with some force onto the floor of the room * * *." As a result she was injured, and this action against defendants followed.

In this court plaintiff argued that since defendant brought the dispenser to the cafe, it must have been negligently placed on the bun warmer by its agents or by agents of Frieze, the owner of the cafe; that the legal relation of defendant and Frieze was principal and factor; and that since defendant was principal and Frieze, as a factor, was defendant's agent, it became immaterial which one of them so placed the dispenser on the bun warmer. In that connection, there is no competent evidence whatever that any agent or employee of defendant ever placed the dispenser on the bun warmer. Rather, the only logical inference is that Frieze or Pegler & Company did so. Also, under the circumstances in this case, no relation of principal and factor ever existed between defendant and Frieze. In that respect, authorities relied upon by plaintiff are entirely distinguishable and not controlling here. To discuss them at length would serve no purpose.

Rather, as argued by defendant, this case involves a

typical bailment for mutual benefit. In other words, defendant owned the dispenser and delivered it to Frieze for his particular purpose to use in the sale of milk purchased from defendant. In that situation, defendant was simply a bailor of the dispenser, and Frieze was bailee thereof.

As stated in 8 C. J. S., Bailments, § 1, p. 222, citing numerous authorities: "The term 'bailment' has been variously defined. It may be comprehensively defined as a delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be."

As held in Yost v. State, 149 Neb. 584, 31 N. W. 2d 538: "The term bailment may be said to import the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished."

In Nagaki v. Stockfleth, 141 Neb. 676, 4 N. W. 2d 766, we adopted the general rule that: " 'When a bailment is reciprocally beneficial to both parties, the law requires ordinary diligence on the part of the bailee, and makes him responsible for negligence.' Mattern v. McCarthy, 73 Neb. 228, 102 N. W. 468."

The universal general rule is that a bailor is not liable to third persons for their injuries resulting from the bailee's negligent use of the property bailed. See McWilliams v. Griffin, 132 Neb. 753, 273 N. W. 209, 110 A. L. R. 1039. See, also, 8 C. J. S., Bailments, § 40, p. 318, citing numerous authorities, which not only adhere to the foregoing general rule but point out exceptions thereto, which have no application here and require no repetition. Such section also, at page 320, states, citing authorities: "In the absence of special

agreement, the lender is under no duty or obligation to inspect or repair the property while it is in the possession of the borrower, and if there is a contract to repair upon notice that repairs are necessary, a duty to repair does not arise until notice is given." Herein we find no evidence of any such agreement. Rather, the only inference is that Frieze had the right to exclusive custody, possession, and control of the milk dispenser for the purpose for which it was furnished by defendant, without any obligation of defendant to install, inspect, maintain, or repair the property.

We find no competent evidence in the record from which it could be reasonably concluded that the milk dispenser involved was under the control of defendant or that same was negligently installed or maintained by it in any manner which proximately caused or contributed to plaintiff's injuries.

For reasons heretofore stated, we conclude that the trial court erred in overruling defendant's motion for directed verdict or dismissal at conclusion of all the evidence, and erred in overruling defendant's motion for judgment notwithstanding the verdict. Therefore, the judgment should be and hereby is reversed and the cause is remanded with directions to sustain defendant's motion for judgment notwithstanding the verdict and to render judgment for defendant, Beatrice Foods Company. All costs are taxed to plaintiff.

REVERSED AND REMANDED.

WENKE, J., participating on briefs.