AGNES SIMPKINS, ALSO KNOWN AS MRS. HAROLD SIMPKINS, APPELLANT, V. KATE RITTER ET AL., APPELLEES.

204 N. W. 2d 383

Filed February 16, 1973.    No. 38502.

Bauer, Galter & Scott, for appellant.

Duane J. Dowd of Riedmann, Dowd & Jeffries, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

This is a replevin action brought by Agnes Simpkins to recover the possession of a horse named Cider Dave from Kate and Jack Ritter, wife and husband. Simpkins appeals from a judgment denying restitution of the horse and damages. We reverse.

The following questions are presented by this appeal: 1. Was the conveyance of Cider Dave to Kate Ritter an outright and unqualified conveyance of title and ownership, or was a bailment created with a reversionary interest reserved in Agnes Simpkins? 2. If a bailment was created, then was Cider Dave to be returned to Simpkins at the end of the 1971 racing season; or was such return to be made when the horse was 12 years old, no longer raceable, or on the death of Kate Ritter?

Simpkins, who is employed in Lincoln, breeds and raises thoroughbred race horses. Kate Ritter is a groom and housewife. Jack Ritter is a horsetrainer and a plater. A groom is one who cares for horses, and a plater is one who shoes horses. The Ritters, who had been training horses for a number of years, trained horses for Simpkins on previous occasions. There was no relationship between the parties other than friendship.

During the 1970 racing season discussions were had between Simpkins and Kate concerning the taking and training of Cider Dave. In January of 1971, Cider Dave was sent from the Simpkins farm in Raymond, Nebraska, to the Ritter farm at Anthony, Kansas. On January 27, 1971, after Cider Dave had been sent to Kansas, Simpkins, pursuant to a phone request, signed the jockey club certificate of foal registration in blank, and mailed the certificate by certified mail to Kate. Kate placed her name on the certificate as the transferee, and inserted the date of transfer as June 8, 1970.

Simpkins' testimony indicates she transferred the horse to the Ritters for the 1971 racing season, at the end of which time it was to be returned to her. She did this because she was unable to train or race the horse. She testified that the Ritters were to pay the entire cost of Cider Dave's upkeep, and in return they were to receive all his earnings.

Kate conceded she paid nothing for the horse, but alleges it was given to her with the intention that she was to be its sole owner. However, she did admit Cider Dave was eventually to be returned to Simpkins. The area of the disagreement involved was when that return was to take place. Was it at the end of the 1971 racing season, or, as Kate contended, not until she was through with him? This she interpreted to be when the horse was 12 years old and no longer raceable; if he broke down; or if something happened to her.

Simpkins contended the transfer of the certificate of foal registration was made in order to permit Kate Ritter to race the horse during the 1971 racing season. She adduced other evidence indicating that such arrangements are frequently made in the racing business. Under her theory, the transfer was not made for the purpose of transferring ownership, but only for the limited purpose of permitting Kate to race the horse and retain all earnings during the period that the bailment was to be in effect.

It is undisputed the horse was to be returned at some time to Simpkins. It is also undisputed Simpkins had refused to sell the horse. It tests credulity to believe that under the circumstances she would give the horse to Kate for its entire racing life. The testimony of Simpkins is much more within the range of believability.

Generally, an agreement to return the identical property makes the contract one of bailment and not of sale, and the title to the property is not changed. 3 Am. Jur. 2d, Bailments, § 22, p. 927. As we said in Luikart v. Massachusetts Bonding & Ins. Co. (1935), 129 Neb. 771, 263 N. W. 124: " 'It is of the very essence of a contract of bailment that it shall contemplate the return of the property bailed, * * *.' "

The trial court ignored the bailment characteristics of the transaction. Relying on the foal certificate and the racing entry, the trial court found Kate Ritter to be the owner of the horse. However, the transfers are entirely consistent with the delivery of possession for bailment purposes.

In Mimick v. Beatrice Foods Co. (1958), 167 Neb. 470, 93 N. W. 2d 627, we said: "The term 'bailment' is comprehensively defined as a delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be."

We conclude the transfer herein was a bailment. It therefore follows that title and ownership remained in the bailor Simpkins. For this reason the trial court's findings that title was in Kate Ritter was in error.

Judgment reversed and cause remanded, with instructions to enter judgment for possession in favor of Agnes Simpkins.

REVERSED AND REMANDED.

CLINTON, J., dissenting.

This court has many times said that in a jury-waived law action the trial court's finding has the same effect as a verdict and will not be set aside unless clearly wrong. Pester v. American Family Mut. Ins. Co., 186 Neb. 793, 186 N. W. 2d 711. This is fundamental and salutary doctrine and should be observed. We have violated the principle in this case and made ourselves the finder of the facts. This is evidenced by the following quotation from the majority opinion: "The testimony of Simpkins is much more within the range of believability." The agreement may indeed be an unusual one, but then many agreements in areas with which we are unfamiliar may seem unusual, but this is surely not the sole measure of the credibility of the witness who testifies concerning it. Indeed, it might have nothing to do with credibility whatever.

An examination of the pleadings in this case does not, as is not unusual in a replevin action, disclose precisely what interests the parties claim other than the right to immediate possession. The plaintiff's petition simply stated she claimed an interest and had the right to possession. The defendants' answer was a general denial.

An examination of the pleadings shows that the dispute was over ownership. The defendant Kate Ritter, testifying to the course of the conversations which led to her claimed ownership of the horse, said: "She still wanted me to take the bay colt and I told her again that I could not afford a horse, and she said this is not going to cost you anything, I am giving this horse to you, it's his only chance. And I said we would have to think it over." With reference to the transaction itself, she testified: "Agnes Simpkins wanted to know if what we had decided and we told her again that we could not afford a horse of our own. She said I am giving you this colt, do you understand that, and I said, well we will do what we can, we will try, and

she cried she was so happy that we had taken the colt known as Cider Dave."

Exhibit 4 to which the trial court made specific reference was the Jockey Club registration for Cider Dave. On the back thereof there appears the following: "All transfers must be signed by previous owner or authorized agent, showing address of new owner and date of transfer." Then is shown a transfer to Kate Ritter of Anthony, Kansas, the date 6-8-70, and the signature of Mrs. Agnes I. Simpkins. The evidence shows that Kate Ritter, as owner, registered Cider Dave with the Secretary of the Racing Commission. Exhibit 19 referred to by the court is a pamphlet of the rules of the Racing Commission of the State of Nebraska adopted pursuant to statute. These rules, among other things, provide as follows: "Each trainer shall register with the Racing Secretary all the horses in his charge giving the name, age, sex, breeding and ownership of each." Rule 12.36, Nebraska Rules of Racing, 1970, p. 84. "All ownerships in a horse, except a trainer's percentage of his winnings, shall be filed with the Racing Secretary, before the horse shall start, as also shall every change in ownership thereafter during the meeting." Rule 13.55, p. 98. "The Jockey Club Registration Certificate for all horses entered in claiming races must be in possession of the Racing Secretary. When ownership changes as a result of a claim, the Racing Secretary shall cause the Jockey Club Registration Certificate to be properly endorsed prior to transfer to the new owner's file." Rule 13.56, p. 98. "No person, or persons shall enter or allow to be entered in a claiming race, a horse against which any claim is held, either as a mortgage, bill of sale, or lien of any kind, unless when or before entering the horse the written consent of the holder of the claim shall be filed with the Association conducting said race." Rule 15.13, p. 122.

The rules themselves, of course, do not directly establish ownership but compliance or noncompliance there-

with by parties who are in the business such as the plaintiff and defendants is certainly admissible evidence on the issue of ownership. Among the items which the court considered decisive is included a statement in the following form requested by Simpkins and signed by Kate Ritter and according to her testimony back-dated at the request of Simpkins. "If anything should happen to me while I own Cider Dave, I here by want the colt to be given to Agnes Simpkins for her own." Simpkins denied the document was in the form in which she wanted it but nonetheless she kept it.

Also included in the documentary evidence is a letter from Simpkins to Kate Ritter, mostly about racing of horses, which contains the following: "Lannigan moved ½ mile west of us and have been trying to find out—they don't believe Dave is yours—plain call us liars to our face." The same letter said: "I hope Dave makes you money every time he runs." Another letter from Simpkins to Kate Ritter contained the following: "Kate —I hope Dave is the best thing that happens to you—We liked him from the start & that is why I kept pushing him at you. It is his only chance."

Simpkins acknowledged that if Ritters had put Cider Dave in a claiming race and if the horse had been claimed, the Ritters would have been entitled to keep the purchase price.

No matter what words may be used to describe the nature of the property interest of the parties in Cider Dave, there is no doubt about what the trier of the fact found and that there was far more than just substantial evidence to support the findings.

Disregarded completely in the majority opinion are the following factors which support the finding of the trial court. If Ritters could make Cider Dave a winner, Simpkins would profit because under Nebraska regulations she, as the breeder, would receive 20 percent of the purse and in addition the value of the parent stock which she owned would increase. Also worthy

of note is the fact that Cider Dave had a foot problem which made his future uncertain. The Ritters apparently trained and raised horses for other people, but until they took Cider Dave owned none of their own. Ritter's husband was a plater and a trainer. Simpkins was not in a position to race the horse. The expert testimony showed that the cost or the value of the 90-day training period to get Cider Dave ready for racing was $750 to $1,000. Cider Dave earned $2,400 in 1971. There was evidence which would indicate that at the beginning of the period Cider Dave's value was from $500 to $1,000.

I would follow the rule which has previously always been followed by this court. This case wholly turns on questions of credibility. The apparent claim of the majority opinion that the trial court misconstrued the applicable rules of law just is not correct.

McCOWN, J., joins in this dissent.