GEORGE P. ROSE, JR., AND GEORGE P. ROSE, SR., APPELLANTS, V.
U.S. NATIONAL BANK OF OMAHA, APPELLEE.

352 N.W.2d 594

Filed July 27, 1984.   No. 83-293.

Quintin S. Hughes, for appellants.

Thomas M. Locher of Hansen, Engles & Locher, P.C., for appellee.

BOSLAUGH, WHITE, and GRANT, JJ., and CHEUVRONT, D.J., and COLWELL, D.J., Retired.

CHEUVRONT, D.J.

This replevin action was brought by the plaintiffs, George P. Rose, Jr., and George P. Rose, Sr., against the U.S. National Bank of Omaha, defendant. The plaintiff George P. Rose, Jr., prayed for possession of the object of the action, namely, a certain 1979 Ford Styleside pickup truck. The plaintiff George P. Rose, Sr., prayed that the court find that he had a "special interest" in the said vehicle and for damages resulting from the need to rent a replacement vehicle. Prior to trial, the pickup truck was returned to the plaintiffs and the case proceeded to trial on the question of damages. George P. Rose, Sr., was the only plaintiff seeking this relief.

Following trial to a jury, both the plaintiffs and the defendant moved for a directed verdict; the defendant's motion for a directed verdict was sustained. In reviewing the directed verdict the plaintiff is entitled to have all competent evidence adduced on his behalf treated as true, to have every controverted fact

resolved in his favor, and to have the benefit of every inference that can reasonably be drawn from the evidence. *Bank of Valley v. Mattson*, 215 Neb. 596, 339 N.W.2d 923 (1983).

On July 17, 1979, George P. Rose, Jr., purchased a 1979 Ford Styleside pickup truck from Sapp Bros. Ford Center, Inc., on an installment sales contract providing for monthly payments of $137.53 due on the 30th of each month, the first being payable on August 30, 1979. This contract was assigned to the defendant, and a lien notation in favor of the defendant was noted on the title to the vehicle on July 31, 1979.

Numerous payments due under the installment sales contract were not paid until delinquent; most of the payments received by the defendant were checks written by George P. Rose, Sr., on the account of George P. Rose Sodding & Grading Co. On April 1, 1981, an employee of the defendant went to the home of George P. Rose, Jr., to either collect a delinquency of $205.14 or take possession of the truck. Although unable to contact George P. Rose, Jr., the employee did discuss the delinquency with his mother, Mrs. George P. Rose, Sr. Mrs. Rose gave the defendant's employee a check drawn on the account of George P. Rose Sodding & Grading Co. at the Ashland State Bank in the amount of $205.14, stating that the check was good. Later that day, the check was delivered to Janet Connelly, a loan counselor employed by the defendant. On April 2, 1981, Mrs. Connelly telephoned the Ashland State Bank and was informed that there were insufficient funds in this account to pay the $205.14 check. In fact, the account had a negative balance of $783.01 on April 1, 1981. Mrs. Connelly sent the check to the Ashland State Bank for collection on April 8, 1981. There is no evidence as to the exact date the check was received by the Ashland State Bank, although it is conceded that the check was in the possession of the bank on April 17, 1981, a Friday.

The check was paid on April 21, 1981; late that afternoon, a cashier's check payable to the defendant was placed in a receptacle which was to be delivered to the defendant that evening. These funds were credited to the account of George P. Rose, Jr., by the defendant on April 23, 1981. There were sufficient funds in this account to pay this check on two occasions prior to April 21, 1981, but, by inadvertence, the Ashland State Bank failed to

pay it. On April 22, 1981, the truck was repossessed by the defendant, at which time it was found to have extensive damage to the grille, front bumper, hood, windshield, and right fender. Following the temporary replevin hearing, the truck was returned to the plaintiffs.

It is not clear from the record what the exact nature of the "special interest" of George P. Rose, Sr., was in the truck. The evidence shows that George P. Rose, Sr., made all of the installment payments to the defendant, other than the original downpayment; that George P. Rose, Sr., used the truck in the business of George P. Rose Sodding & Grading Co.; and that he paid for the maintenance, insurance, and fuel for the truck. The evidence would support a finding that the use of the truck by George P. Rose, Sr., was with the permission and consent of George P. Rose, Jr., and that George P. Rose, Sr., was in the position of a bailee.

Although the plaintiffs' theory of recovery is not entirely clear, it appears that the principal issues raised in this appeal are as follows: (1) The telephone call by the defendant to the Ashland State Bank did not constitute presentment for payment under Neb. U.C.C. § 3-504 (Reissue 1980); (2) The acceptance of the check by the defendant bank constituted a suspension of the obligation under Neb. U.C.C. § 3-802 (Reissue 1980); and (3) The defendant bank was equitably estopped from repossessing the security because it had accepted the $205.14 check on April 1, 1981, and did not give the plaintiffs further warning prior to repossessing the vehicle. We will address the second issue only. The doctrine of equitable estoppel has no application to this case. See *Chappelear v. Grange & Farmers Ins. Co.*, 190 Neb. 589, 210 N.W.2d 921 (1973). Further, the defendant concedes that the telephone call did not constitute presentment under the rule in *Kirby v. Bergfield*, 186 Neb. 242, 182 N.W.2d 205 (1970).

Under the provisions of Neb. U.C.C. § 3-802(1) (Reissue 1980), the acceptance of the check on April 1, 1981, by the defendant suspended pro tanto the underlying obligation until its presentment. The defendant was precluded from enforcing any right under the security agreement until the check was dishonored. *Westland Homes Corp. v. Hall*, 193 Neb. 237, 226

N.W.2d 622 (1975). Although the check in question here bore no special notations, both the Ashland State Bank and the defendant concede that it was sent to the Ashland State Bank "for collection" and that there were no specific instructions attached to or included with the check.

When a check is forwarded to the payor bank for collection and is to be held for a reasonable period of time until sufficient funds become available in the account to pay the check, such delivery is not a presentment within the meaning of Neb. U.C.C. § 3-504 (Reissue 1980). *Idaho Forest Industries, Inc. v. Minden Exch. Bank & Trust Co.*, 212 Neb. 820, 326 N.W.2d 176 (1982). Since there was no presentment, the check could not be dishonored and the defendant had no enforcement rights under its security agreement. We conclude, therefore, that the seizure of the truck by the defendant was unlawful, since the plaintiffs were not in default.

The defendant argues that even if there was no default in payment, it was entitled to seize the truck under the terms of the agreement in order to protect its security by reason of the extensive damages. However, this argument ignores the testimony of the employees that the sole reason for repossessing the truck was the delinquent payment.

The plaintiffs attempted to introduce copies of rental agreements with an auto leasing business in order to show the amount of damages sustained by George P. Rose, Sr. These agreements described the rental vehicle and listed the monthly rental and mileage fees. Objections to these exhibits were sustained by the trial court on the basis of foundation. In *Husebo v. Ambrosia, Ltd.*, 204 Neb. 499, 283 N.W.2d 45 (1979), we held that the measure of damages for the loss of use of a vehicle is an amount which does not exceed either the fair rental value of a vehicle of similar nature for a reasonable length of time or the amount actually paid, whichever is the least. We stated: "There is no evidence indicating that the charges actually paid by the plaintiff for the use of the leased vehicles were not fair and reasonable, or that they exceeded the fair rental value of such vehicles in the locality involved." *Id.* at 502, 283 N.W.2d at 47. Under this rule these rental agreements would be admissible to show the amount paid by the plaintiffs for the rental of the

vehicle.

The judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

GRANT, J., dissenting.

I respectfully dissent. I do not feel that George P. Rose, Sr., has any standing in this case and that the action of the trial court in dismissing the case was proper and should be affirmed.

Plaintiffs, George P. Rose, Jr., and George P. Rose, Sr., brought this action in replevin and for damages on May 29, 1981. The petition alleged that George junior had purchased a pickup truck in July 1979; that George junior was the certificate of title holder as to the truck but that George senior had made all the payments on the truck; and that the defendant bank had a recorded lien on the certificate of title to the truck. Defendant bank had used self-help to recover the vehicle, without replevin action, on April 22, 1981. After the initial hearing, the district court on June 11, 1981, ordered this truck returned to plaintiffs. The truck was returned apparently to its owner of record, George P. Rose, Jr., who took no further part in the case.

The case proceeded to trial on February 7, 1983, with plaintiff George P. Rose, Sr., seeking damages for the loss of use of the truck during the time the truck was wrongfully taken by the defendant bank—apparently from April 22 to June 11, 1981. George junior did not appear at the trial, nor was any evidence submitted on his behalf. The evidence at the trial showed that the monthly payments on the truck had been made by checks written on check blanks entitled "George P. Rose Sodding & Grading Co." and drawn on Ashland State Bank. The title of the account at the Ashland State Bank was "George Rose Sod Grading Co." There was no evidence as to whether these entities were corporations, partnerships, sole proprietorships, or otherwise, or what George senior's connections with those entities were.

George senior testified the truck was used in the sodding company business, but did not specify what the terms of that use were. No contract, oral or written, was testified to. George

junior also worked in the business. This evidence was apparently the basis for George senior's allegation that he had a "special interest" in the truck. The "special interest" allegedly entitled George senior to seek damages.

I am unable to discover the meaning of the term "special interest" in Black's Law Dictionary (5th ed. 1979), in 1 Nebraska Digest, Descriptive-Word Index (1939, Cum. Supp. 1980, and Supp. 1983), or in 12 Nebraska Digest, *Words and Phrases* (1940, Cum. Supp. 1971, and Supp. 1983). The term is vaguely pled in the petition and haphazardly attacked in the answer, and, in my judgment, is incapable of conveying enough meaning to give George senior standing to seek damages.

The majority indicates recognition of this difficulty, but says the evidence would support a finding that George senior was in the position of a bailee. Bailments are all based on contracts, express or implied. See, e.g., *Simpkins v. Ritter*, 189 Neb. 644, 204 N.W.2d 383 (1973), and *Peck v. Masonic Manor Apartment Hotel*, 203 Neb. 308, 278 N.W.2d 589 (1979). The testimony does not disclose any contract between George junior and George senior, and I fail to see how we can determine there was any bailment between those parties.

There is the further problem that we are here dealing with a motor vehicle. Neb. Rev. Stat. § 60-105(1) (Reissue 1978) provides in part: "No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle . . . sold or disposed of, or mortgaged or encumbered, unless there is compliance with this section." George senior is trying to establish an "interest" in this motor vehicle by some sort of an encumbrance on that vehicle arising out of some alleged transaction with the owner of the vehicle. This transaction is not noted on the certificate of title. As stated in *The Cornhusker Bank of Omaha v. McNamara*, 205 Neb. 504, 508, 288 N.W.2d 287, 290 (1980):

The Legislature has mandated that no court shall recognize the right, title, claim, or any interest of any person in or to any motor vehicle unless there is compliance with section 60-105, R.R.S. 1943. It is clear to this court that the plaintiff has made no good faith effort

to comply with the statutory requirements. This court, therefore, refuses to recognize any claim of lien or any claim of legal title by the plaintiff and holds that the plaintiff may not be successful against the defendant upon an action in replevin.

In my judgment, George senior has failed to prove that he has any interest in the truck in question. He is in no privity of contract with the defendant bank, and whatever duty was owed by the bank was owed to its debtor, George junior, owner of the truck, and not to George junior's father.

I would affirm.