No. 85-158

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

GENE G. IVERSON,

       Plaintiff and Respondent,

  -vs-

FIRST BANK OF BILLINGS (formerly
the Midland National Bank of
Billings, Montana),

       Defendant, Third Party Plaintiff
       and Appellant,

  -vs-

MONTANA LIVESTOCK PRODUCTION CREDIT
ASSOCIATION OF HELENA, MONTANA,

       Third Party Defendant, Counter-Claimant
       and Respondent,

---

APPEAL FROM:  District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Moulton, Bellingham, Longo & Mather; Gerald B. Murphy
        argued, Billings, Montana

    For Respondent:

        Alexander & Baucus; John D. Alexander argued for
        Iverson, Great Falls, Montana
        Luxan & Murfitt; Walter S. Murfitt argued for Montana
        Livestock, Helena, Montana

---

                Submitted:  October 22, 1985

                  Decided:  December 31, 1985

Filed: DEC 31, 1985

*Ethel M. Harrison*

---
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

In the action below, plaintiff Gene Iverson (hereinafter Iverson) filed a complaint against two defendants, Howard Nuernberger (hereinafter Nuernberger) and First Bank Billings (hereinafter First Bank). In count I of his complaint, Iverson alleged that Nuernberger was liable to him for the face amount of a dishonored check issued by Nuernberger to Iverson. In count II of his complaint, Iverson alleged that First Bank was also liable to him for the face amount of the dishonored Nuernberger check because First Bank had violated § 30-4-302, MCA, (the midnight deadline rule) by failing to return the dishonored check in a timely manner after the subject check was presented to First Bank for collection. First Bank responded by denying liability and alleging that § 30-4-302 was not violated because the subject check was not "presented" to First Bank for collection as a "demand item," and also because the check was held longer than normal by First Bank pursuant to the specific request and authority of Montana Livestock Production Credit Association (hereinafter MLPCA), a joint payee on the subject check.

Thereafter, First Bank filed a third-party complaint against MLPCA seeking indemnification from MLPCA if it should be found that First Bank was liable to Iverson. MLPCA then filed a counterclaim against First Bank alleging, as Iverson had done earlier, that First Bank had violated the requirements of § 30-4-302, MCA, and sought the face amount of the subject check as damages. Nuernberger, at this point, stipulated to entry of judgment in favor of Iverson and the remaining parties all moved for summary judgment.

2

The District Court of the Eighth Judicial District, Cascade County, the Honorable Thomas M. McKittrick presiding, granted summary judgment in favor of Iverson and MLPCA. The District Court found First Bank strictly liable for the face amount of the subject check because of First Bank's failure to comply with the requirements of § 30-4-302. From this judgment First Bank appeals.

We reverse the summary judgment of the District Court entered in favor of Iverson and MLPCA against First Bank, and hereby order the District Court to enter summary judgment in favor of First Bank against Iverson and MLPCA in accordance with this opinion.

Plaintiff, Gene Iverson, is a rancher outside of Great Falls, Montana, who obtained financing for his cattle operation from MPLCA. Iverson, in obtaining financing from MLPCA, executed and delivered to MLPCA a loan agreement whereby MLPCA was given a first security interest in all of Iverson's cattle. On September 2, 1979, Iverson entered into a contract with Nuernberger, doing business as the Montana Cattle Company, for the sale of a number of Iverson's cattle. The contract provided that Nuernberger pay to Iverson the sum of $4,000 as a down payment with a balance owing of $41,209. Shortly thereafter, Nuernberger executed and delivered to Iverson his check, payable to Iverson and MLPCA as joint payees, in the amount of $41,209 and took possession of the cattle. Iverson then delivered the check, without endorsement, to MLPCA for application upon his debt owed to MLPCA. At this point, MLPCA released its secured position in Iverson's cattle prior to the check being paid.

Subsequently, MLPCA deposited the check in its account at First Security Bank in Helena, Montana, for payment through the normal banking collection process. On November

3

26, 1979, the check arrived at First Bank Billings and was subsequently returned to MLPCA on November 28, 1979, marked "insufficient funds" (NSF). The check was deposited for a second time to MLPCA's account on November 29, 1979, and was again returned by First Bank Billings to MLPCA on December 4, 1979, because of insufficient funds. The check, having been deposited twice and twice refused because of insufficient funds, was stamped "payment refused twice--present for collection only."

On or about December 6, 1979, MLPCA, through its assistant treasurer, Alice Tyanich, telephoned First Bank and was put in touch with James Wempner (hereinafter Wempner), vice-president in charge of the Agriculture Department for directions regarding collection of the Nuernberger check. Wempner instructed Alice Tyanich to forward the check to First Bank to his (Wempner's) attention granting permission to First Bank to hold the check beyond the normal 24-hour period. Pursuant to these instructions, the Nuernberger check was mailed to First Bank with an accompanying memorandum which read in pertinent part as follows:

> SUBJECT: Check no. 214-Montana Cattle Company DATE December 6, 1979
>
> I am returning herewith the above named check and you hereby have our authority to hold it for longer than the usual 24-hour period. When funds are available on the above account please send a cashier's check made payable to Montana Livestock PCA.
>
> Date _____ BY ALICE H. TYANICH, Assistant Treasurer.

The above memo and subject check were received by Wempner through the mail, but instead of taking the check to the collection department of First Bank pursuant to the established policy of First Bank, he kept the check in his desk in a separate file titled "Nuernberger, Montana Cattle

4

Company." The record indicates that Nuernberger, doing business as the Montana Cattle Company, had been a customer of First Bank for approximately five years and his account had been personally handled by Wempner during this period. The record also indicates that during this same time period, Wempner received for collection several other NSF checks issued by Nuernberger which he would place in his Nuernberger desk file. Wempner would check the Nuernberger account balance daily and would pay the NSF checks held in his desk file in installments as Nuernberger deposited funds. The record shows Wempner's actions allowed Nuernberger to stay in business as a cattle buyer and also saved Nuernberger's creditors the inconvenience of having to send their NSF checks to First Bank numerous times for collection.

The established policy of First Bank with respect to collection items, such as the subject check, required Wempner to deliver the check to the collection department of First Bank where it was to be recorded. If funds were not available to pay the check, according to First Bank policy, the check was returned prior to midnight of the day after receipt of the check to avoid liability under § 30-4-302, MCA, (the midnight deadline rule). First Bank policy did not allow a waiver of the midnight deadline rule for checks greater than $500.

Wempner acknowledged that he was aware of First Bank's policy, but indicated that he did not like the limitations mandated by the midnight deadline rule or the policy of First Bank. MLPCA, through Alice Tyanich, was not aware of the policy of First Bank.

Wempner kept the subject check in his desk file from December 10, 1979, the date on which it was received, until January 30, 1980, when it was returned pursuant to the

5

request of Tom Brown, then president of MLPCA. During this time period First Bank did not send out notice of dishonor to either MLPCA or Iverson, or pay the subject check. Iverson's first contact with First Bank occurred on December 27, 1979, seventeen days after Wempner received the subject check for collection. The subject check in the amount of $41,209 has never been paid.

The appellant, First Bank, presents the following issues for review:

(1) Whether § 30-4-302, MCA (the midnight deadline rule), applies to the instant case, when the check in question was delivered to First Bank by MLPCA outside the ordinary bank collection procedure?

(2) Whether MLPCA made an agreement with First Bank varying the effect of § 30-4-302, MCA?

(3) Whether the District Court erred in awarding damages under § 30-4-302, MCA?

(4) Whether First Bank is entitled to indemnity from MLPCA?

We find the first issue presented by First Bank to be dispositive of the instant case. Under its first issue, First Bank is arguing that the subject check was not "presented" as a "demand item" for payment, as defined by the Montana Uniform Commercial Code (MUCC), but was instead left by MLPCA with First Bank with instructions to pay the check when and if funds became available in Nuernberger's account. First Bank argues because the subject check was not properly "presented" as a "demand item," § 30-4-302, MCA (the midnight deadline rule), does not apply to the instant case and thus First Bank is not liable for the face amount of the subject check. We agree with First Bank's result, but on a slightly different theory.

6

The major statute under consideration is § 30-4-302, MCA. Subsection (a) of the statute is commonly referred to as "The Midnight Deadline Rule." The statute reads as follows:

> Payor bank's responsibility for late return of item. In the absence of a valid defense such as breach of a presentment warranty, (subsection (1) of 30-4-207), settlement effected or the like, if an item is <u>presented</u> on and received by a payor bank the bank is accountable for the amount of:

> (a) a <u>demand item</u> other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or

> (b) any other properly payable item unless within the time allowed for acceptance or payment of that item the bank either accepts or pays the item or returns it and accompanying documents. (Emphasis added.)

The parties contend, in light of this statute, there are two major conditions relevant to the instant case that must be satisfied before First Bank becomes liable under the midnight deadline rule: there must be a "demand item" (subject check) "presented" (to First Bank) within the meaning of § 30-4-302, MCA. In arguing these conditions the parties devote all of their attention to subsection (a) of § 30-4-302. Subsection (a) essentially provides that in the absence of a valid defense, a demand item, retained beyond the "midnight deadline" by the payor bank without either paying, returning, or giving notice of dishonor renders the payor bank liable to the payee for the face amount of the item. Sun River Cattle Co., Inc. v. Miners National Bank of Montana N.A. (1974), 164 Mont. 237, 521 P.2d 679. The "midnight deadline" referred to

7

in describing the duty of the payor bank is defined by § 30-4-104(h), MCA, as midnight of the next banking day following the banking day on which the item was received.

This Court recognizes that subsection (a) of § 30-4-302, MCA, is a valid theory for holding a bank liable when a "demand item" is "presented" to a payor bank and the bank holds the item beyond the midnight deadline. But this Court holds that subsection (a) of § 30-4-302 is not even applicable to the instant case because the subject check is not a "demand item." Therefore, if First Bank is going to be held liable under § 30-4-302, this Court must look instead to subsection (b) of the statute.

First, as mentioned above, we hold that the subject check is not a "demand item." The subject check though dated and due, is not a demand item because it was transmitted to First Bank with the understanding that it should be held until there were sufficient funds in Nuernberger's account to pay the check. To better understand this conclusion it is important to review under what conditions the subject check was delivered to First Bank by MLPCA. As previously discussed in the facts of this opinion, MLPCA mailed the subject check to First Bank with the following written instructions:

> I am returning herewith the above named check and you hereby have our authority to hold it for longer than the usual 24-hour period. When funds are available on the above account please send a cashier's check made payable to Montana Livestock PCA.

According to this memorandum, MLPCA authorized First Bank to hold the check beyond the usual 24-hour period and to pay the check only "when funds are available." This Court holds there is no conceivable way to construe this memorandum other than to state that the intent of MLPCA was to transmit

8

the check, not as an immediate demand for payment, but rather as a request for payment whenever funds might be available to pay the check. This simply is not "demand item" as contemplated by § 30-4-302(a), MCA. Therefore, §30-4-302(a) is not even applicable to the instant case.

Next, before we analyze the facts of this case under § 30-4-302(b), MCA, the concept of "presentment" must be discussed. The parties, especially First Bank, argue at great length how the term presentment should be interpreted under § 30-4-302. Despite the extensive arguments of the parties, this Court holds the term "presentment" should be liberally interpreted as the MUCC suggests.

Section 30-3-504(1), MCA, defines presentment under the MUCC as follows:

> How presentment made. (1) Presentment is a demand for acceptance or payment made upon the maker, acceptor, drawee or other payor by or on behalf of the holder.

In addition, Official Comment 1 of the UCC states the following in explaining the purpose of this statute:

> This section is intended to simplify the rules as to how presentment is made and to make it clear that any demand upon the party to pay is a presentment no matter where or how.

The above statute and comment make it clear that the concept of "presentment" is to be liberally interpreted under the MUCC. This Court agrees. Therefore, in light of the above discussion, the only question remaining in the instant case is whether a presentment occurred as required by § 30-4-302, MCA.

First, with regard to MLPCA, there is no question it presented the subject check to First Bank within the meaning of § 30-3-504(1). The facts are uncontroverted that MLPCA, through Alice Tyanich, mailed the subject check to First Bank for collection pursuant to the instructions of James Wempner.

9

Wempner also admits receiving the check from MLPCA though the mail for collection purposes. These facts constitute a presentment.

However, with regard to Iverson, there was no presentment of the subject check to First Bank. Iverson delivered the subject check, after he received it from Nuernberger, to MLPCA for application upon his debt owed to MLPCA. The record does not indicate Iverson made any attempt, after he delivered the subject check to MLPCA, to demand that First Bank accept or pay the subject check. At this point, the record indicates Iverson considered the subject check to be the responsibility of MLPCA. Therefore, because Iverson never presented the subject check to First Bank within the meaning of § 30-3-504(1), his claim against First Bank under § 30-4-302 must fail.

Finally, after determining the subject check was not a "demand item" and MLPCA properly "presented" the subject check to First Bank for payment, we can analyze MLPCA's claim against First Bank under § 30-4-302(b), MCA. As noted above, § 30-4-302(b) provides as follows:

> [i]f an item is presented on or received by a payor bank the bank is accountable for the amount of:
>
> . . .
>
> (b) any other properly payable item unless within the time allowed for acceptance or payment of that item the bank either accepts or pays the item or returns it and accompanying documents.

In light of this statute, MLPCA's claim against First Bank under § 30-4-302 must also fail. In the instant case, within the time allowed for acceptance or payment, First Bank returned the subject check to MPLCA at MLPCA's request because there was never enough money in Nuernberger's account to clear the check. The memorandum sent by MLPCA to First

10

Bank, along with the subject check, specifically allowed First Bank to hold the check until sufficient "funds [were] available [in] the [Nuernberger] account" to pay the check. First Bank never violated this agreement and, within the time allowed for acceptance or payment, it returned the subject check to MLPCA. Therefore, First Bank is neither liable nor accountable under § 30-4-302(b) to MLPCA.

Although we find the first issue presented by First Bank to be dispositive of the instant case, we also feel it is important to clarify the second issue presented by First Bank. Under issue #2, the facts which lead us to the conclusion that the subject check was not a "demand item," also lead us to the conclusion that the parties agreed under § 30-4-103, MCA, that the midnight deadline of § 30-4-302 should not apply to the instant case. Section 30-4-103 provides that:

> (1) The effect of the provisions of this chapter may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable. (Emphasis added.)

Montana has recognized that the parties may agree to vary the time requirements of § 30-4-302. In Sun River Cattle Co., Inc. v. Miners Bank of Montana N.A. (1974), 164 Mont. 237, 521 P.2d 679, this Court recognized that there may be an agreement to vary the effect of § 30-4-302, but on the facts before it in this case, there was insufficient evidence to prove such an agreement. The courts of other jurisdictions have reached the same conclusion. See, Western Air and Refrigeration v. Metro Bank of Dallas (1979), 599 F.2d. 83.

11

We hold there is such an agreement, as provided by § 30-4-103, MCA, that varied the responsibility of First Bank and relieved it under the facts of this case from compliance with § 30-4-302 (the midnight deadline rule). The memorandum sent by MLPCA to First Bank, along with the subject check, specifically provided that "you hereby have our authority to hold it [the subject check] for longer than the usual 24-hour period." Clearly MLPCA's memorandum varied the responsibility of First Bank by waiving the midnight deadline rule in the instant case.

After determining First Bank is not accountable to either Iverson or MLPCA under § 30-4-302, MCA, the additional issues raised by First Bank need not be discussed.

The summary judgment of the District Court entered in favor of Iverson and MLPCA against First Bank is reversed, and the District Court is hereby ordered to enter summary judgment in favor of First Bank against Iverson and MLPCA in accordance with this opinion.

Justice

We concur:

Chief Justice

Justices

12

Mr. Justice Frank B. Morrison, Jr. dissents as follows:

The majority concludes that the "midnight deadline rule" is not available for recourse against the Bank for the following reasons: (1) The subject check was not a "demand item"; (2) the subject check was not presented by Iverson; (3) the midnight deadline rule was waived. I disagree with all three conclusions of the majority.

The majority opinion concludes that the check was not a demand item because it was accompanied by authorization to hold for longer than the usual 24 hour period and to pay when funds were available. The accompanying memorandum may be viewed as an attempt by MLPCA to waive the "midnight deadline rule" but I do not see that as changing the character of what is clearly a demand item. The majority neglects to quote the Montana statute defining demand item. Section 30-3-108, MCA, states:

> Instruments payable on demand include those payable at sight or on presentation and those in which no time for payment is stated.

The check here was clearly a demand item within the purview of the statute. Apparently the majority feels that since the check was to be held until funds became available that the check was not payable on demand. I would expect that most people anticipate that a bank will only pay a check if funds are available. The holding of this Court runs contrary to the holding in Sun River Cattle Co. v. Miners Bank of Montana N.A. (1974), 164 Mont. 237, 521 P.2d 679. In that case the Montana Supreme Court held that checks similar to the check here at issue were demand items. The Sun River Cattle Company case is not distinguished by the majority but is simply ignored.

The majority opinion finds that Iverson made no presentment in this case. The subject check was made payable

13

to both PCA and Iverson. There was no endorsement on the check but a stamped notation on the back stated: "Credit to the account of the within named payee. Absence of Endorsemnt Guaranteed." The check was delivered for collection to First Bank. On its face there is no way of determining whether the check came from PCA or from Iverson or from both of them. In view of the broad wording of § 30-3-504, MCA, which states that presentment is a demand for payment made by or on behalf of the holder, I fail to see how the majority distinguishes between presentment made by the PCA and presentment made by Iverson. Under the holding of the majority I suppose all payees must make a joint presentment before they can have the protection of 30-4-302.

Finally, I disagree with the majority's holding that there was a waiver of the midnight deadline rule. First of all, waiver is not sufficient. Section 30-4-103 states:

> (1) The effect of the provisions of this chapter may be varied by _agreement_ except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care . . . (Emphasis added.)

There must be an agreement. The bank officer who attempted to enter into an agreement for extension of the midnight deadline rule lacked authority from the Bank to enter into such an agreement. In fact, the undisputed evidence shows the Bank's express policy forbid the bank officer to enter into such an agreement. The Bank cannot seek to rely upon the terms of an agreement made by its agent in violation of the express instructions of the principal bank.

The following facts are taken from the trial court's findings:

> 10. Mr. Wempner received the subject check through the mail but instead of taking the check to the collection department of First Bank-Billings

14

pursuant to the established policy of First Bank-Billings for collection as a non-cash item, he kept the check in his desk in a separate file titled 'Nuernbergor, Montana Cattle Company'. (Jacobson Depo., p. 6-9; Wempner Depo., p. 21, p. 67-68, setting forth normal bank policy; Jacobson Depo., p. 23; Wempner Depo., p. 30, p. 67, l. 2-3, establishing that Mr. Wempner kept the subject check in his desk which violated bank procedure.

13. Mr. Wempner acknowledged that he was very much aware of the bank's policy, acknowledged he did not like the limitations mandated by the midnight deadline or the policy of the bank. (Wempner Depo., p. 67-69, p. 62-63, p. 66, p. 15-116.

14. Mr. Wempner had no authority to change said bank policy or to request or accept a waiver of said policy. The MLPCA, through Alice Tyanich, was not aware of the policy of First Bank-Billings. (Jacobson Depo., p. 8; Wempner Depo., p. 62; Affidavit of Alice Tyanich, Appendix "C".)

It is clear that Wempner's attempt to effectuate an agreement for a waiver of the midnight deadline rule was clearly outside the scope of his authority; no agreement was created; the Bank cannot rely upon § 30-4-103.

Furthermore, if such an agreement had been made, it would only extend the midnight deadline rule if the Bank acted in good faith. The trial court found that the Bank was acting to benefit its depositor at the expense of the payees on the check. This of course is evidence of lack of good faith but unfortunately is ignored by the majority opinion.

For the reasons mentioned herein I would affirm the District Court.

_____
Justice

15