515 So.2d 1038 (1987)
The BANK OF MIAMI, a Florida Banking Institution, Appellant,
v.
BANCO INDUSTRIAL Y GANADERO DEL BENI, S.A., a Bolivian Banking Institution, Appellee.
No. 87-398.
District Court of Appeal of Florida, Third District.
November 3, 1987.
Rehearing Denied December 14, 1987.
*1039 Greenberg, Traurig, Askew, Hoffman, Lipoff, Rosen & Quentel and Kendall B. Coffey and Hilarie Bass, Miami, for appellant.
Valdes-Fauli, Cobb & Petrey and Wilfredo A. Rodriguez and Jeremy J. Hart, Miami, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
This is an appeal from a summary judgment entered in favor of Banco Industrial Y Ganadero Del Beni, S.A. (Banco Beni) and against the Bank of Miami on Counts I, II and V of Banco Beni's five-count amended complaint. We reverse.
The claims contained in these counts arose when checks totalling $2,000,000 drawn on an account at the Bank of Miami were presented for payment to Banco Beni in Bolivia. Rather than accept the checks for deposit and process them for clearance through regular banking channels, Banco Beni sought to meet the presenter's request for immediate payment of the funds. After allegedly receiving appropriate assurances from the Bank of Miami about the worthiness of both the checks and the drawer, Banco Beni paid the presenter. The Bank of Miami subsequently refused to honor the checks. Banco Beni was able to recover $958,000 from other sources, but sued the Bank of Miami for the uncollected $1,042,000.
Banco Beni alleged in Count I of the amended complaint that the Bank of Miami had breached its "warranties, promises and representations" concerning the checks and the drawer; in Count II that the Bank of Miami, by failing to pay or return the checks or to send notice of dishonor before midnight on its next banking day following the banking day on which it received the checks, violated the "midnight deadline" rule, §§ 674.302, 674.104(1)(h), Fla. Stat. (1979),[1] and thereby became accountable to Banco Beni for the amount of the dishonored checks; and in Count V that the Bank of Miami was negligent in failing to honor the checks out of sufficient funds in the drawer's account deposited during the three-week period between the Bank of Miami's receipt and return of the checks.
As to all counts, we are of the view that Banco Beni has failed to conclusively show, as it must to be entitled to summary judgment, that there are no genuine issues of material fact to be resolved. As to Count I, the disputed issues are, at the least, whether the Bank of Miami made a knowing or negligent misrepresentation as to the worthiness of the checks and the status of the drawer, whether Banco Beni relied upon any representations or promises made by the Bank of Miami, and whether, if Banco Beni relied upon any such representations and promises, its reliance was reasonable. As to Count V, the factual dispute involves the far broader question of whether the Bank of Miami was negligent in light of all of the circumstances, including its proffered defense that Banco Beni, through acts of its agent, relieved the Bank of Miami of any obligation to collect on these particular checks. The judgment as to these counts is therefore reversed.
We also reverse the summary judgment on Count II. This count alleges that the Bank of Miami is liable to Banco Beni for violating Section 674.302, Florida Statutes (1979), which provides:
"In the absence of a valid defense such as breach of presentment warranty (s. 674.207(1)), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of:
"(1) A demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the *1040 item or send notice of dishonor until after its midnight deadline; or
"(2) Any other properly payable item unless within the time allowed for acceptance or payment of that item the bank either accepts or pays the item or returns it and accompanying documents."
"Midnight deadline" is defined as "midnight on [the bank's] next banking day following the banking day on which it receives the relevant item." § 674.104(1)(h), Fla. Stat. (1979). Accordingly, under the terms of the statute, a bank is liable for the amount of a demand item which is presented if the bank fails to either pay or return the item by midnight of the banking day following the day on which the bank received the item. This "midnight deadline" rule applies, in our view, to demand items only, not items which are delivered to the bank for collection.
The distinction between "demand" and "collection" items is this: a demand item is presented for immediate payment, while a collection item is one which is delivered to a bank with the understanding that the bank will pay upon the item if and when sufficient funds are deposited in the drawer's account to cover the amount of the check. The midnight deadline rule  which requires honor, dishonor, or return within a discrete and limited time  is, therefore, entirely inconsistent with the collection process under which a bank accepts a check with the understanding that it is to be held until sufficient funds come into the drawer's account allowing for the payment of the check. As one court observed:
"[T]he concept of a midnight deadline is not compatible with any approach under which the payor bank seeks to wait for the deposit of funds in the drawer's account. The reasonableness of such a banking custom must, therefore, be measured on its own terms. We conclude that this criterion is met when a depositary bank takes a possibly worthless instrument and directs the payor bank to adopt a technique that may provide the only chance for collection."

David Graubart, Inc. v. Bank Leumi Trust Co., 48 N.Y.2d 554, 563, 399 N.E.2d 930, 935-36, 423 N.Y.S.2d 899, 905 (1979) (footnote omitted).
The rule that collection items are not subject to the midnight deadline was also followed in Western Air and Refrigeration, Inc. v. Metro Bank, 599 F.2d 83 (5th Cir.1979). There, a check payable to Western Air and originally returned for insufficient funds was redeposited at Metro Bank, the payor or drawee bank. Metro Bank told Western Air that there were not sufficient funds to pay the check and held the check for more than two weeks while awaiting a deposit of funds by the drawer that would allow the check to be paid. When Metro Bank eventually returned the check unpaid, Western Air sued Metro Bank, alleging that the retention of the check for more than two weeks violated the midnight deadline rule. The Fifth Circuit reversed, holding that Metro Bank was not accountable for the returned check. The court found that the check had not been presented as a demand item but instead had been left with the bank "for collection" until such time as additional funds were deposited into the account and thus was not subject to the midnight deadline rule.
"A step preliminary to that present demand for payment did not constitute a presentation. In this case, leaving the check with Metro was a preliminary step. The parties knew that until Harbor Boat deposited funds sufficient to cover the check issued to Western Air, Metro would not pay the check. Leaving a check with a bank with this type of understanding is not a present demand for payment and not a presentment within the meaning of § 3-504."

Western Air and Refrigeration, Inc. v. Metro Bank, 599 F.2d at 88.
See also Iverson v. First Bank, 712 P.2d 1285 (Mont. 1985); Rose v. U.S. National Bank, 218 Neb. 97, 352 N.W.2d 594 (1984).[2]
*1041 Banco Beni's efforts to distinguish the foregoing cases are unavailing. While it is true that in the cited cases the items submitted for collection were first dishonored as demand items, this is not a prerequisite to the use of the collection process; it is simply a reflection of the most common reason why some checks come to be treated as collection items. There is absolutely no reason  and Banco Beni suggests none  why an item initially submitted for collection should stand on any different footing under the law than an item submitted for collection after it has first run an unsuccessful route as a demand item. Since there is a genuine issue of material fact whether the parties in the present case agreed that the checks would be collection items, thereby permitting the Bank of Miami to hold the checks for that purpose without being subjected to the dictates of the midnight deadline rule, the summary judgment for Banco Beni on Count II cannot stand.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] The events that gave rise to this litigation occurred in the early months of 1981.
[2] In cases where the depositary bank's transmittal letter stated that the checks were being sent "for collection," but also requested immediate return or notice if the checks were not paid on arrival, courts have held that the checks were actually demand items, and that the use of the term "collection" was by mistake. Engine Parts, Inc. v. Citizens Bank, 92 N.M. 37, 582 P.2d 809 (1978); Kane v. American National Bank & Trust Co., 21 Ill. App.3d 1046, 316 N.E.2d 177 (1974); Farmers Cooperative Livestock Market, Inc. v. Second National Bank, 427 S.W.2d 247 (Ky. Ct. App. 1968). In the present case, there is a factual dispute whether the subject checks were intended by the depositary bank to be collection items, delivered to the Bank of Miami in the hope that it would be able to collect the funds from the drawer.